[No. 9841.   Department Two.   June 14, 1912.]

THELMA OLSON, *Appellant*, v. J. J. HAGGERTY *et al.*,
*Respondents.*[1]

MALICIOUS PROSECUTION—SEARCH PROCEEDINGS—NAMING PLAIN-
TIFF.   A malicious prosecution may be based upon search proceed-
ings; and Rem. & Bal. Code, §§ 2237, 2239, not requiring the proceed-
ings or warrant to designate the person suspected, it is not necessary
that the proceedings name the plaintiff as the suspected party.

SAME—DESIGNATION OF PREMISES.   A search warrant describes
the plaintiff's "place of residence" so as to enable her to maintain an
action for malicious prosecution, where it mentions the dwelling and
premises of another wherein the plaintiff was a "resident, lodger,
and inmate," and where it appears that the relation of landlord
and tenant did not exist between the plaintiff and the owner of the
house, and plaintiff did not maintain a distinct establishment there-
in.

SAME—SUFFICIENCY OF WARRANT—LIABILITY OF INSTIGATOR.   One
who institutes search proceedings and directs the sheriff's search
of plaintiff's effects thereunder may be guilty of malicious prosecu-
tion, even if the search warrant was technically insufficient to pro-
tect the officer.

SAME—LIABILITY—ESSENTIALS—ARREST OR SEIZURE OF PROPERTY.
The arrest of the person or the seizure of property is not essential
to sustain an action for malicious prosecution in the institution of
search proceedings.

SAME—DAMAGES—SPECIAL DAMAGES.   The disgrace, humiliation
and public suspicion caused by a search warrant to recover stolen
goods are sufficient elements of damage to sustain a substantial re-
covery for malicious prosecution, without proof of pecuniary loss or
special damage.

Appeal from a judgment of the superior court for Pacific
county, Smith, J., entered August 15, 1911, dismissing an
action for malicious prosecution, upon sustaining demurrers
to the complaint.   Reversed.

*H. W. B. Hewen*, for appellant.

*Chas. E. Miller*, for respondents Haggerty.

*Welsh & Welsh*, for respondent Swanson.

[1]Reported in 124 Pac. 145.

ELLIS, J.—An action for malicious prosecution. The complaint, which is voluminous, in substance alleges that the defendants Haggerty and Haggerty are husband and wife, and the defendant Swanson is their daughter; that the plaintiff, an unmarried woman, is a teacher in the public schools at South Bend, in Pacific county; that, in pursuance of a conspiracy between the defendants to defame the reputation and good name of the plaintiff, the defendant Swanson, on April 14, 1911, made and filed an affidavit and complaint for a search warrant with a justice of the peace, so as to cause the plaintiff to be suspected of theft, and to procure her lodging room and personal effects in the house of Mrs. C. A. Heath, at South Bend, to be searched for certain goods alleged to have been stolen; that the plaintiff was a resident, lodger, and inmate of the house and home of Mrs. C. A. Heath, and her wearing apparel and personal effects were in a room occupied by the plaintiff in that house. It is further alleged that, upon the complaint, the defendants caused a search warrant to be issued for the search of that house; that they, under color and pretense of executing the warrant, directed and caused the room of the plaintiff, her trunk, boxes, wardrobe, satchel, wearing apparel, and all personal effects contained in her room or belonging to the plaintiff contained in the house of Mrs. C. A. Heath, to be entered, opened, and searched for stolen goods, by the sheriff and his assistant; that the plaintiff and one Linda M. Loeffler were then teachers in what is known as the Broadway school, in South Bend, and were the only teachers rooming at the house of Mrs. Heath; and that by direction of the defendants to the sheriff, no portion of the house occupied by others than the plaintiff and Miss Loeffler, and no articles or effects belonging to others than the plaintiff and Miss Loeffler, were searched pursuant to the warrant. It is also averred that none of the alleged stolen articles were found, and that the sheriff returned the warrant to the justice of the peace with an indorsement as follows:

"State of Washington, County of Pacific, ss.:

"I hereby certify and return that the within search warrant came into my hands on the 14th day of April, 1911, and that on the 14th day of April, 1911, at 7 o'clock p. m., I made thorough and careful search of the premises of Mrs. C. A. Heath, in South Bend, Washington, and particularly of the personal property and effects of Thelma Olson and Linda Loeffler, in said place as therein commanded, and that I found none of the goods and articles described in the within search warrant or any information of same, and therefore return this warrant into court.

"T. J. Stephens, Sheriff of said County."

"Dated May 20th, 1911.

It is then alleged that the defendants have not further prosecuted the complaint, have produced no evidence in support of it; that the proceedings have terminated in plaintiff's favor; that the defendants have made no reparation for the injury done; and that the charge in every respect relating to the plaintiff and Miss Loeffler was untrue. It is further charged:

"That in causing, procuring, persuading and advising said Florence Swanson to make, sign, file and publish said affidavit, and in causing and directing the effects of plaintiff and her lodgings to be searched by the officers of the law for stolen goods, said J. J. Haggerty and Georgiana Haggerty acted, in conjunction with Florence Swanson, maliciously and without probable cause, and with intent to injure the reputation of plaintiff, and for the purpose of causing her to be suspected of theft, and expose her to public hatred, contempt and ridicule and that said Florence Swanson in making, signing, and filing said affidavit and causing the personal effects and lodgings of plaintiff to be searched by officers of the law for stolen goods, acted in conjunction and connivance with her parents, J. J. Haggerty and Georgiana Haggerty, maliciously and without probable cause, and with intent to injure the reputation of plaintiff, and for the purpose of causing her to be suspected of theft, and to expose her to public hatred, contempt and ridicule."

As elements of damage, it is alleged that much notoriety resulted from the search, and the proceedings became the

subject of general comment and gossip, resulting in ridicule of the plaintiff; that she was principal of the Broadway school, and the directors and principal of the South Bend schools conducted a public investigation of the charge, resulting in most humiliating notoriety, general suspicion, comment, and ridicule of the plaintiff throughout Pacific county, and that, by reason of the search, she has been and still is suspected by many of theft; has suffered great mental anguish and nervous strain, been deprived of her rest and sleep for many nights, been doubted by her friends and shunned by many of them, been the object of general suspicion, been compelled to justify herself and defend her private conduct and life to the school directors, and has suffered damage in her reputation and professional standing to the amount of $5,000, for which sum judgment is prayed. A copy of the search warrant is attached to the complaint as an exhibit, and sufficiently sets out the affidavit. Omitting formal parts and signature, it is as follows:

"Whereas, Mrs. Florence Swanson has this day made complaint on oath to the undersigned, one of the justices of the peace in and for said county, that the following goods and chattels (describing them) the property of the said Mrs. Florence Swanson, have been within three days past, or were on or about the 12 or 13 day of April, 1911, by some persons or persons unknown, stolen, taken and carried away out of the possession of the said Mrs. Florence Swanson in the county aforesaid; and also that the said Mrs. F. Swanson verily believes that the said goods, or a part thereof, are concealed in or about the house or premises of Mrs. C. A. Heath of South Bend, in said county of Pacific and state of Washington . . .

"Therefore, in the name of the state of Washington, you are commanded that with the necessary and proper assistance you enter into the said house and premises and at any other place that in the discretion of the sheriff of Pacific county, the same may be found, and there diligently search for the said goods and chattels, and if the same, or any part thereof, be found on such search, bring the same, and also

the said parties forthwith before me, to be disposed of according to law."

Separate demurrers of the defendants Haggerty and of the defendant Swanson were sustained as to the charge of malicious prosecution, the court holding that the complaint did not state a cause of action on that ground, but that it was sufficient to sustain an action for unlawful and wrongful search. The plaintiff elected to stand upon her complaint and declined to prosecute the action as one of trespass. From a judgment of dismissal, the plaintiff has appealed.

It is familiar law that search proceedings, when maliciously instituted, or prosecuted without probable cause, may be made the basis of an action for malicious prosecution. 25 Am. & Eng. Ency. Law (2d ed.), p. 150; 35 Cyc. 1275, 1276. No question is made but that, in a proper case, the action would lie. It is contended, and the trial court held that, inasmuch as neither the affidavit nor the search warrant contained the name of the appellant, they did not constitute a criminal proceeding against her, and the complaint showing this fact stated no cause of action for malicious prosecution. If this contention is sound, then malicious prosecution could seldom if ever be based upon search proceedings in this state. Such proceedings are governed by chapter 22, Rem. & Bal. Code. The section governing the complaint or affidavit reads as follows:

"When complaint shall have been made on oath to any magistrate authorized to issue warrant in criminal cases that personal property has been stolen or embezzled, or obtained by false tokens or pretenses, and that the complainant believes that it is concealed in any particular house or place, the magistrate, if he be satisfied that there is a reasonable cause for such belief, shall issue a warrant for such property." Rem. & Bal. Code, § 2237.

There is no requirement that the complaint or affidavit shall contain any person's name, or that it shall directly charge any person with theft or other crime. It is sufficient

if it describe the property and the suspected place of concealment.   Search proceedings are essentially of a somewhat impersonal nature in their inception, being based upon suspicion rather than direct accusation.   This is emphasized by the statutory provision as to what the search warrant shall contain.   It is as follows:

"All such warrants shall be directed to the sheriff of the county or his deputy, or to any constable of the county, commanding such officer to search the house or place where the stolen property or other things for which he is required to search are believed to be concealed, which place and property or things to be searched for shall be designated and described in the warrant, and to bring such stolen property or other things, when found, and the person in whose possession the same shall be found, before the magistrate, who shall issue the warrant, or before some other magistrate or court having cognizance of the case."   Rem. & Bal. Code, § 2239.

This statute does not require that the warrant designate the person suspected, by name or otherwise.   It is sufficient if it describe the suspected place of concealment and the things to be searched for.   The affidavit here in question was sufficient basis for the issuance of the warrant, and the warrant contained the statutory essentials.   It follows that the fact that it did not contain the name of the appellant did not alone make it an insufficient basis for an action for malicious prosecution on her part.

But it is urged—and the court held—that neither the affidavit nor the warrant mentioned the place of residence of the appellant; that the warrant did not authorize the search of any house or place but the house or premises of Mrs. C. A. Heath; that the power of the officer was limited by the warrant; and that, if he did search the appellant's room as alleged, the respondents are not liable in an action for malicious prosecution for the officer's unauthorized act in so doing.

The demurrers admitted the truth of the material allega-

tions of the complaint. The complaint alleged that the appellant was a "resident, lodger and inmate of the house and home of Mrs. C. A. Heath." If this is true, then the warrant did describe the place of residence of the appellant and did authorize its search. There is nothing in the complaint justifying the inference, contended for by respondents and adopted by the court, that the relation of landlord and tenant in any exclusive sense existed between Mrs. Heath and the appellant. We find nothing from which it can be reasonably inferred that the appellant occupied separate apartments under an exclusive possession or maintained a distinct establishment from that of Mrs. Heath. The idea is negatived by the allegation that she was an inmate of the house and home of Mrs. Heath and that her belongings which were searched were in a room in that house. Construing the affidavit and the warrant in connection with the statute, as we must, it is manifest that the use of the name of Mrs. Heath was merely as a means of describing the premises to be searched, not to charge her with theft. The allegations of the complaint sufficiently show that the warrant authorized the search of the appellant's place of residence and effects. The direction to search "in or about the house of Mrs. C. A. Heath" was sufficient to embrace the room of an inmate of her home. We have examined with care all of the authorities cited by the respondents in this connection, and we are satisfied that they are not controlling under the facts here pleaded. For example, in *Larthet v. Forgay*, 2 La. Ann. 524, 46 Am. Dec. 554, the court says:

"It appears by the testimony that under the same roof there were two dwellings. One, which was immediately at the corner of the streets named in the warrant, was occupied by one Marcel, who kept a cabaret there. The other was occupied by Larthet, who kept a cigar shop. The respective premises appear to have been distinct, the yards being divided by a fence, and a door by which the premises communicated being nailed up. After making search in the cabaret, and in the other apartments of Marcel's tenement,

in one of which the breastpin was found, the officer, who was accompanied by Forgay, and appears to have acted under his instructions, proceeded to force the communication into the plaintiff's premises."

It is evident that in that case a separate establishment from that described was searched. The distinction from the facts here pleaded is plain.

But even if the warrant were held technically insufficient to authorize the search of the appellant's room and effects, it does not follow that respondents would not be liable to an action for malicious prosecution. The complaint alleges that the defendants directed the sheriff to search the room and effects of the appellant and Miss Loeffler and no other parts of the house. If, as alleged, the respondents, acting maliciously and without probable cause, directed the search, they became the moving cause of the injury and were responsible for it, though the officer exceeded his authority in following their direction. The essence of the injury resulting from a wrongful search is the unwarranted invasion of one's premises and property and the notoriety, suspicion, and disgrace incident to the imputation of crime thereby implied. It is manifest that the injury is the same whether the warrant be technically sufficient or not, and whether the officer exceeded his authority or not. The person urging forward the search cannot be heard to say that the officer should have disregarded his direction. As said by this court in *Kerstetter v. Thomas,* 36 Wash. 620, 79 Pac. 290, adopting the language of Justice Brewer in *Parli v. Reed,* 30 Kan. 534, 2 Pac. 635:

"Where a party files a complaint upon which he causes the arrest of another for an alleged crime, it is no defense to an action for malicious prosecution that the complaint was technically defective. So long as it was treated by the justice and officers as sufficient, and the defendant in fact arrested thereon, the party filing it is estopped from questioning its sufficiency."

While the case cited and the case quoted arose upon unlawful arrest, it is obvious that the same rule should apply in case of illegal search.  In the case before us, the trial court expressed the opinion that verbal or even written directions of the defendants would not justify the officer in exceeding the authority of the warrant.  The question here, however, is not one of official liability.  An officer may be liable for exceeding the command of process, but that fact in no manner exonerates the instigator of the proceeding from liability for an unauthorized use of the process by his connivance and direction.  While an officer may justify under a warrant good upon its face, though illegal in fact, the rule is different as to nonofficial instigators and abettors.

"But such is not the rule applicable to strangers or third persons, who are not required, in the exercise of a public duty, to assume the responsibility of executing legal process. If they interfere of their own motion, without authority or command from the officers of the law, to cause a writ or warrant to be enforced, they act at their peril; and if the process, though regular on its face and apparently good, was unauthorized, or was issued by a tribunal having no jurisdiction, or acting beyond the scope of its power, they are liable for the consequences arising from the enforcement of unlawful process.  It is upon this ground that a party is held responsible, at whose suit execution is made, when the officer serving it incurs no liability.  The rule is, that if a stranger voluntarily takes upon himself to direct or aid in the service of a bad warrant, or interposes and sets the officer to do execution, he must take care to find a record that will support the process, or he cannot set up and maintain a justification." *Emery v. Hapgood*, 7 Gray 55, 66 Am. Dec. 459.

The same principle is recognized in the following authorities: *Wallace v. Williams*, 14 N. Y. Supp. 180; *Gibson v. Holmes*, 78 Vt. 110, 62 Atl. 11, 4 L. R. A. (N. S.) 451; *McAleer v. Good*, 216 Pa. 473, 65 Atl. 934, 116 Am. St. 782, 10 L. R. A. (N. S.) 303; *Grimes v. Greenblatt*, 47 Colo. 495, 107 Pac. 1111; 25 Am. & Eng. Ency. Law (2d ed.), p. 150.

"A party is liable when he authorizes, encourages, directs or assists an officer to do an unlawful act, or to do a lawful act in an unlawful manner, or to abuse, exceed, or disregard his duty or authority; as, for example, when he directs the service of void process, the arrest of a person privileged from arrest, directs the refusal of lawful bail, procures an arrest without process, or participates in the doing of any other act which the process or authority of the officer will not legally justify." Newell, Malicious Prosecution, p. 109.

It seems to us that, upon principles of natural justice and as sustained by both reason and authority, the respondents were liable for their own acts in directing the officer to make the search, without any regard to the sufficiency of the warrant as a protection to the officer. The case of *Ton v. Stetson*, 43 Wash. 471, 86 Pac. 668, does not militate against this view. There the complainant, Stetson, did not participate in nor direct the wrongful act of the officers. In fact, they proceeded contrary to his instruction in arresting Ton. They made no search as directed by Stetson.

The respondents further contend, and the court held, that the action will not lie because the appellant was not arrested nor her property seized. While it has been generally held that an arrest of the person or a seizure of property is essential to sustain an action for malicious prosecution growing out of civil causes, both reason and authority sustain the contrary rule in cases arising from criminal proceedings where maliciously instituted without probable cause. In such cases, as we have seen, the essence of the wrong is the unreasonable search of one's premises and property, carrying with it an imputation of theft or complicity therein.

"The theory of appellee's counsel that arrest of plaintiff's person or seizure of his property is essential to his right of action is unsound. Nor is it necessary to his action that he should have been expressly charged with the larceny of the alleged stolen goods. The essence of the wrong done to him was the unreasonable invasion of his home, which wrong was aggravated by the charge that stolen goods were there secreted—thus at the very least casting upon him the sus-

picion of complicity in larceny." *Krehbiel v. Henkle*, 142 Iowa 677, 681, 121 N. W. 378.

"There is a corresponding conflict of opinion as to whether actual interference with freedom of locomotion by arrest or imprisonment is essential to the maintenance of the action, based on a criminal prosecution. The doctrine of one group of cases is that there must be at least a technical arrest or imprisonment, and that it is not sufficient that an accusation of a criminal offense has been preferred before a magistrate, if the accused has not been apprehended or process served. The better and general opinion is in accordance with the general tendency to enlarge the scope of the action, that it may be maintained, although there had been no arrest or imprisonment or holding to bail." 26 Cyc. 12.

See, also, *Olson v. Tvete*, 46 Minn. 225, 48 N. W. 914; *Holmes v. Johnson*, 44 N. C. 44; 1 Ency. Plead. & Prac., § 1784.

It is also urged that the complaint was insufficient in that it failed to allege actual damage. The disgrace, humiliation and public suspicion caused by the search were amply pleaded. In actions for malicious prosecution, these are usually the chief elements of damage. They are sufficient to sustain a substantial recovery without allegation or proof of special pecuniary loss. *Charlton v. Markland*, 36 Wash. 40, 78 Pac. 132. We are of the opinion that the complaint stated a cause of action for malicious prosecution. The demurrers should have been overruled.

The judgment is reversed, and the cause remanded with direction to overrule the demurrers and, on completion of the issues, that the cause be tried.

DUNBAR, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.