## HARDIN *v.* HIGHT.

### Opinion delivered January 20, 1913.

1. MALICIOUS PROSECUTION—MALICE—PROBABLE CAUSE.—The procuring the issuance of a search warrant, maliciously and without probable cause, will support an action for damages for malicious prosecution. (Page 197.)

2. MALICIOUS PROSECUTION—PROBABLE CAUSE—ADVICE OF COUNSEL.— When A. invited B. to go into her shed and procure some apples, and later missed some articles of clothing from a trunk in the shed, and upon advice of counsel A. had B.'s house searched, under search warrant; it appearing that A. had misstated the facts to counsel upon whose advice she acted, a jury is warranted in finding that A. acted maliciously and without probable cause. (Page 196.)

Appeal from Craighead Circuit Court, Jonesboro District; *Frank G. Smith,* Judge; affirmed.

#### STATEMENT BY THE COURT.

Appellee brought suit for damages for malicious prosecution against appellant, alleging that she had maliciously and without probable cause sworn out a search warrant before a justice of the peace of Lawrence County, charging that certain of her wearing apparel had been stolen and she suspected it was concealed in the house occupied by appellee and that under said warrant the constable searched her house and the trunk mentioned in the affidavit and failed to find any of such property and made such return upon the warrant; that the effect of the making of the affidavit was to charge appellee with a felony, larceny, and that appellant knew the statements of the affidavit to be false, when made by her.

Appellant admitted making the affidavit and denied that it was done maliciously and without probable cause and that she knew its contents to be false.

The parties lived at Jonesboro, had known each other from May 10, 1910, to July 4, 1911; they had not been intimate, though appellant had called on appellee once or twice, each time it happened that appellee was away from home or just returning. On July 2, 1911, about 6 P. M. appellee went into appellant's yard with a bucket to get some apples, there being an apple tree in the yard and she having been invited prior to that time to come and help herself to the apples when she desired them; she was dressed in a shirtwaist and skirt, without any apron. As she came into the yard, appellant, who was at Mrs. Stein's house across the street, called to her and said she would come home if appellee had come to visit her. Appellee replied that she had just run over to get some apples and had left the baby at home and must get back. Appellant told her she had some apples already gathered in the little smokehouse in the yard, a house she used for a bathroom and kept much of her wearing apparel in, in trunks, and to go in there and help herself; appellee went into the little house, got about half a dozen apples, not being in the house and yard more than five minutes and didn't touch or take anything, but the apples, she stated.

She next visited appellant on July 4, at which time she was told of the loss of the silk dress and other wearing apparel and appellant told her they were taken Saturday night, which was the night of the evening on which appellee got the apples. Appellee then moved to Walnut Ridge on the night of the 9th of July, where she was living at the time of the search of her house on August 19, 1911; she was visiting in Jonesboro and was told that appellant was in Walnut Ridge and wanted to see her and went home, supposing it to be on another matter of business and was met by the constable with a search warrant, who accompanied her to the house and searched the room and trunk and found none of the property claimed to have been stolen.

It was also shown that appellant borrowed $50 from appellee for three months on May 10, 1910, and had been asked for payment of the money and that appellee finally had to sue her for it. She didn't claim to have suffered any damage in Jonesboro, where all parties were known. She also denied having agreed with appellant to wait for the payment of the money until fall, when her rents would come in and sued on the note in the latter part of August. The statement of the occurrence of the search appeared in the newspaper at Jonesboro at the time.

Mrs. Stein testified that Cassie Hardin was at her home eating supper on the evening of July 2, 1911, and called to appellee across the street to help herself to the apples and that she would find some already gathered in the smokehouse. She did not see appellee either when she came or went and it rained early that night and appellant stayed all night at her house, going home early the next morning. In the evening of the next day she called witness and said she had been crying all day, that her clothes had been stolen and she had an idea who stole them. The witness thought some negro had stolen them and suggested that, but appellant said, "No; Mrs. Hight had stolen them." Mrs. Stein said she didn't think that one white woman would steal clothes from another one and that they wouldn't fit her. Appellant told several people she believed appellee got her things.

The chief of police testified that he was called to the phone in Walnut Ridge in the summer of 1910 and requested to notify appellee of her intention of having her house searched, and to come up there. That appellant had before consulted him in his official capacity about the loss of the clothes and he had advised her to consult the prosecuting attorney. He did not remember having told her she could get out a search warrant if she believed appellee had the clothing, but did remember saying that if appellee was about to move to Walnut Ridge and she intended having a search warrant issued, it would be better to wait until she had moved, as she would more likely have the goods in her possession at Walnut Ridge, if she had taken them.

Appellant stated that she was at Mrs. Stein's across the street from her home in Jonesboro, late in the evening of July 2, 1910, saw appellee at her house and called to know if she had come to visit her, saying she would come home if she had. Upon her replying that she had only come to get a few apples and had to return to the baby, she told her, "All right," that the weeds in the yard were wet and to go into the little smokehouse and she would find a pan of apples on the trunk and to help herself. This room was floored and had a bath tub in it and she kept her clothes in it. After supper, she went out on the porch and saw Mrs. Hight leaving her house and called Mrs. Stein's attention to it. She didn't know whether Mrs. Stein saw her, but she could have seen her and she thought she did. This was about thirty minutes from the time Mrs. Hight came to her house. She had a bulk of something; seemed to be carrying it in her arms and lap. It didn't look like a bucket and her back was towards appellant. A bucket would not have been carried that way. She thought appellee was only taking the pan of apples. She told her to take all she wanted. Appellee was just outside of the edge of the house and went into Fisher street and then turned north. Appellant did not return home that night, on account of the rain, but went over early the next morning and found a lavender silk waist in the yard, with the weeds sticking up through it, it having rained all night. This had been in her trunk, which she had had packed to go to Batesville to visit her sick father. Upon investigation, she missed her clothes and the apples were not gone. A black silk skirt and a brown one, a waist and several articles of underwear, all new, were gone; about all the new wearing apparel she had. She saw no tracks and concluded the waist had been in the yard over night, on account of the weeds sticking through it, being beaten down by the rain and she came to the conclusion that the party she saw leaving her house had taken her clothes. Mrs. Hight came to her house on July 4, bringing her baby with her and asked her if she was going to the picnic, and appellant told her some one had stolen her clothes

and she didn't have anything to wear. To this statement appellee made no response at all and made no inquiry and soon afterward left. That she phoned the chief of police Sunday and asked him what she should do. He told her she could get out a search warrant, if she had reasonable grounds to believe appellee had taken her clothes. She conferred with him again on Monday morning and then went to the justice of the peace for advice and he told her to go to the chief of police. She then went to a lawyer, a Mr. Matthews, and consulted him and told him she had lost her clothes and who she thought got them and he told her if she had reasonable grounds to believe the party got them she would be safe in getting a search warrant. She stated to this attorney all the facts in the case. She testified that she had also consulted another attorney, Mr. Tharpe, before making the affidavit for the search warrant and told him the facts of the case and that she was advised that she had a right to get the search warrant.

Tharpe testified that appellant related the facts to him virtually as already stated, and he advised her to go to the justice of the peace and make the necessary affidavit and that he would issue the warrant. This witness stated, however, that she did not tell him of her previous acquaintance with appellee, nor that she knew her to be a woman of good character, nor that she came to her house for the apples and was told to help herself, nor how long appellee stayed in the house, nor the remark claimed to have been made to Mrs. Stein upon her leaving about her having stayed so long.

There was also some testimony relative to the location of the little smokehouse upon the lot and of the streets surrounding, and the house of Mrs. Stein, with a view to showing the location of the parties at the time Mrs. Hardin claimed to have seen Mrs. Hight leaving the room with the bundle of clothing. Mrs. Stein testified that she did not think she went out on her porch after supper, nor that anything was said about going to town, nor that appellant made a remark about Mrs. Hight staying so long at her house; that she had been on friendly

terms with appellant up to that time, but was not very friendly now. It was admitted that Matthews and Tharpe were practicing lawyers during the year 1910. The court instructed the jury and it returned a verdict in appellee's favor and from the judgment thereon this appeal comes.

*E. H. Mathes,* for appellant.

Want of probable cause is a material averment, and, though negative in form, it must be proved by the plaintiff by some affirmative evidence. 32 Ark. 763; 96 Ark. 325.

There must be a concurrence of probable cause and malice to warrant a recovery, and no malice is shown in this case unless the bare fact of instituting the prosecution should be so construed.

If appellant in good faith stated to counsel all of the material facts and circumstances within her knowledge with reference to appellee's guilt or innocence, and followed the advice given by him upon such statement, this constitutes probable cause and appellee could not recover. 1 Am. & Eng. Enc. of L. (2 ed.), 899.

Even if the facts did not justify appellant's suspicion, and if she omitted some material facts in her consultation with counsel, yet, if she honestly believed that appellee was guilty, and if such omission was not intentional and with a view of obtaining an opinion favorable to the prosecution, there could be no malice in fact or by inference and appellee must fail.

If she acted in good faith upon legal advice, her defense was complete. 98 U. S. 187, Law. Ed. 116; 32 Ark. 166; 77 Ill. 164; 19 Am. & Eng. Enc. of L. (2 ed.), 685, 686.

*Lamb & Caraway,* for appellee.

Before advice of counsel can be of any avail to one instituting a criminal prosecution, it must first appear that the sources of information were apparently reliable; that the statement embodied all of the material facts known to the party making it; that the party making the statement believed them to be true and thereafter acted upon them in good faith. 73 Ark. 437; 76 Ark. 41;

63 Ark. 387, 391-2. In the absence of probable cause, and especially when, as in this case, it clearly appears that the plaintiff in a criminal prosecution acted in bad faith, malice will be inferred. 63 Ark. 387, 391.

Probable cause and malice were properly defined in the instruction. 69 Ark. 439, 441.

Kirby, J., (after stating the facts). It is insisted that the court erred in refusing appellant's request for a directed verdict.

In *Price Mercantile Co.* v. *Cuilla,* 100 Ark. 318, this court said: "The law is well settled that where one lays all the facts in his possession before the public prosecutor, or other counsel learned in the law, and acts upon the advice of such counsel in instituting a prosecution this is conclusive of the existence of probable cause and is a complete defense in an action for malicious prosecution. *Kansas & Texas Coal Co.* v. *Galloway,* 71 Ark. 351.''

It is not undisputed that appellant related all the material facts in the case known to her to the attorneys whom she consulted relative to the procuring of the search warrant and acted upon their advice in doing so. Only one of the attorneys testified and he denied that she told him of her acquaintance with appellee and of the invitation extended to her to go into the room and help herself to all the apples she desired, nor of the length of time she stayed and her remark to Mrs. Stein upon her leaving, about her having stayed so long. Mrs. Stein denied also that appellant had said anything to her upon the porch of her home about the length of time appellee stayed in the house or of seeing her depart therefrom after supper.

The court correctly declared the law in the instructions given to the jury and they doubtless believed that appellee had not made a full disclosure of the material facts to the lawyers whom she consulted before having the search warrant issued, or that she had made some false statements as to what the facts relative thereto were in her consultation with them. The question was fairly submitted to the jury upon proper instructions and their decision is conclusive upon the point that there was

lack of probable cause for the institution of the proceeding.

A search warrant is one of the agencies provided by law for the detection and punishment of crime and the recovery of property stolen. Our Constitution guarantees the right to the people of the State to be secure in their persons, houses, papers and effects against unreasonable search, * * * and "no warrant shall issue, except upon probable cause, supported by oath or affirmation," etc. Art. 2, § 15. In other jurisdictions it has been held that procuring the issuance of a search warrant against a person maliciously and without probable cause will support an action for damages for malicious prosecution, even though the warrant does not direct the arrest of the person in case the stolen goods be found in his possession. *Anderson* v. *Cowles,* 72 Conn. 335, 77 Am. St. Rep. 310; *Cary* v. *Sheets,* 67 Ind. 375; *Sprangler* v. *Booze,* 103 Va. 276; 49 S. E. 42; *Elsee* v. *Smith,* 2 Chitty, 304, 18 E. C. L. 648, 1 D. & R. 97; *Miller* v. *Brown,* 3 Mo. 96.

Certainly the putting in motion of such an agency maliciously and without probable cause is as much calculated to injure the feelings and reputation of the person against whom it is directed as if the further direction for his arrest in case the property sought should be found in his possession were contained therein. This being true, we hold the procuring the issuance of a search warrant maliciously and without probable cause, will support an action for damages for malicious prosecution.

Finding no error in the record, the judgment is affirmed.