**Gallucci v. Phillips & Jacobs Inc.**

*Daniel Thistle,* for plaintiffs.
*Fred B. Buck,* for defendant.

GORDON, *J.,* November 4, 1991—This action was instituted on April 17, 1985, by the plaintiffs Richard D. Gallucci and Joanne Gallucci against the defendant, Phillips & Jacobs Inc. for malicious prosecution and defamation of character.

The facts of the case are as follows:

On October 14, 1983, the plaintiff, Richard D. Gallucci discovered that his employer, Phillips & Jacobs (referred to as P&J) contacted the Federal Bureau of Investigation and arranged an investigation of industrial

espionage. The plaintiff served as a software technician for the Toppan Video Proofer which is specialized equipment designed to enable publishers to view final colored pictures as they would appear in print. In March 1982, top management personnel assigned to the Toppan project was either terminated or reassigned including the plaintiff. Subsequent to discussions with management, the plaintiff was reassigned to the sales force.

Mr. Gallucci began a job search due to the company's lack of success with the Toppan Proofer, and established contact in 1981 with P&J's chief competitor, Hazeltine, for employment. Gallucci received a written offer from Hazeltine on August 26, 1983, after numerous contacts and negotiations with that company.

On October 13, 1983, Gallucci presented the offer to his immediate supervisor at P&J. Bob Kurlich, allegedly in an attempt to grant P&J an opportunity to match the Hazeltine offer. In the afternoon of the same day, the plaintiff met with officers of P&J and two attorneys. At the meeting, the plaintiff was accused of industrial espionage. The interrogation by Gallucci was recorded, and the plaintiff was escorted to his office and asked to leave the company immediately.

P&J contacted the FBI and met with personnel from that office the next day. Documentation including records of telephone calls between Hazeltine and the plaintiff, and records of computer accesses made by the plaintiff regarding prospective customers of P&J was given to the FBI. As a result, the FBI began an investigation. A grand jury was convened and a subpoena was issued to obtain Hazeltine's records involving the plaintiff.

Mr. Gallucci mailed a letter to the president of the United States on February 26, 1984, stating that it was his belief the investigation by the FBI had been initiated

against him by his former employer, P&J, allegedly due to his new employment. On or about May 15, 1984, the plaintiff received a letter from the FBI stating the U.S. Attorney's Office had declined any decision to prosecute him. As a result, the FBI terminated its investigation. On April 17, 1985, a summons was filed on behalf of the plaintiff against P&J. Pursuant to the Freedom of Information Act, the plaintiff requested and received information from the FBI files regarding his case. Upon receipt of this information, a complaint was filed.

The plaintiffs filed this action against Phillips & Jacobs Inc. Count I of the complaint alleged malicious prosecution. The allegation asserted inter alia, a prosecution was instituted by the FBI which was favorably terminated when the U.S. attorney declined prosecution.

Count II of the complaint alleged that based upon the defendant's actions there was an abuse of process.

Count III alleged the actions of the defendant constituted the intentional infliction of emotional distress due to the intentional and purposeful infliction of mental and emotional distress on the plaintiffs.

Count IV alleged the actions of the defendant constituted outrageous conduct.

Count V of the complaint alleged libel and slander. Richard Gallucci contended the accusations made against him in the presence of the employees of the defendant, at P&J, were false and defamatory. The statements, as alleged by the plaintiff, libeled him in his business, accused him of a crime and constituted "per se" defamation.

Count VI of the complaint sought punitive damages.

On April 23, 1985, in response to the defendant's preliminary objections to the plaintiffs' complaint, the

court overruled the defendant's demurrers to Counts I, III, IV and V, and the objections to plaintiffs' Count II were stricken from the record. Also, the objections to plaintiffs' Count IV were sustained without prejudice to plaintiff's right to file an amended complaint incorporating the claim for punitive damages into the other counts of the complaint.

Among the defenses raised by the defendant was that the plaintiff did not bring his action for defamation within the prescribed period of the statute of limitations. At trial Mr. Gallucci contended he did not have sufficient facts to bring this action until he received the information regarding him from the FBI file. The defendant's position was that the plaintiff had adequate information to pursue his case prior to the date he filed suit.

At the close of plaintiffs' case, the defendant's motion for a compulsory nonsuit as to the charge of malicious prosecution was granted. The defendant's motion for a compulsory nonsuit as to intentional infliction of emotional distress, and outrageous conduct leading to emotional distress was also granted. The issues submitted to the jury were: (1) did the plaintiff bring this action timely and (2) was the plaintiff defamed? As to the question of timeliness, the issue for the jury was whether the plaintiff, Richard Gallucci, in the exercise of reasonable diligence knew or should have known that the defendant, acting through its employees, made libelous statements about him to the FBI prior to April 18, 1984? The jury answered this question yes and returned a verdict in favor of Phillips & Jacobs.

The plaintiffs filed post-trial motions and contend the court erred in the following manner. That it was error to grant a nonsuit with respect to the plaintiff's claim for misuse of process in that the issuance of a subpoena by the grand jury to obtain Richard Gallucci's

personnel records constituted sufficient process to warrant a claim for malicious prosecution. They also allege the court erred by submitting the question of the statute of limitations with respect to the defamation action to the jury. The plaintiffs contend that the court should have declared as a matter of law the statute of limitations was tolled until the plaintiff had access to the FBI file which was April 22, 1984. Thus, it is the plaintiff's contention the lawsuit was filed timely on April 17, 1985.

The Galluccis' argue that without the specific knowledge as to the libelous statements allegedly made by P&J, they were unable to file their complaint previously. This is due to the fact, they say, the requirements for filing a complaint in libel must be done so with particularity. They further argue that without the actual statements made by the defendant, they were unable to file a complaint which would withstand preliminary objections in the context of a demurrer. Plaintiffs cite *Spain v. Vicente,* 315 Pa. Super. 135, 461 A.2d 833 (1983) where the requirements for filing a complaint in libel were outlined. The *Spain* court stated:

"The complaint fails to state with any particularity the content of the oral or written statements claimed to have been made ... [and the] 'sufficiency of the complaint is governed by the ... fact that the lacking information was or could be supplied is not governing.' Thus, the complaint must stand or fall of its own accord." (citations omitted) *Id.* at 140-141, 461 A.2d at 836.

And, in further support the plaintiff also contends that whenever some paramount authority prevents a person from exercising his legal remedy, the statute

of limitations is tolled for that period during which he has been so thwarted. *Application of U.S. Authorizing Interception, etc.* 413 F. Supp. 1321 (E.D. Pa. 1976)

Under the laws of Pennsylvania, it is the duty of the one asserting a cause of action to use all reasonable diligence to inform himself or herself properly of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period. *Ciccarelli v. Carey; Canadian Mines Ltd.,* 757 F.2d 548 (3d Cir. 1985). Pursuant to 42 Pa.C.S. §5523(1), the statute of limitations for defamation in Pennsylvania is one year. Under the doctrine known as the discovery rule, the statute of limitations does not begin to run until the plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury. *Corbett v. Weisband,* 380 Pa. Super. 292, 551 A.2d 1059 (1988); *Grover v. Riddle Memorial Hospital,* 357 Pa. Super. 420, 516 A.2d 53 (1986) quoting *Cathcart v. Keene Indus. Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984).

The principal question surrounding the statute of limitations issue is whether the alleged injury was ascertainable and, if so, at what point? Here the plaintiffs assert that it did not occur until Mr. Gallucci received the information in the FBI file via the Freedom of Information Act. The defendant contends the plaintiff knew prior to February of 1984, and certainly at the time he wrote the letter to the then president of the United States. Both parties requested of the court to rule as a matter of law that their respective positions were correct.

This the court did not do and submitted this issue to the jury. When the facts are in doubt or dispute, the question of whether an action is barred by the statute of limitations is one of fact to be determined by the jury. The question of whether a plaintiff has exercised due diligence in discovering incidence of his injury for purpose of the statute of limitations is normally a jury question. *Chittenholm v. Giffin,* 361 Pa. 454, 65 A.2d 371 (1949); *DeMarino v. Albert Einstein Medical Center,* 313 Pa. Super. 492, 460 A.2d 295 (1983); *A.J. Aberman Inc. v. Funk Bldg. Corp.,* 278 Pa. Super. 385, 420 A.2d 594 (1980).

We believe this issue was correctly submitted to the jury. The jury was instructed that it was to determine when Mr. Gallucci knew with the exercise of reasonable diligence he should have known when he had a cause of action. The jury was given a special interrogatory which asked the question: "Do you find that the plaintiff, Richard Gallucci, in the exercise of reasonable diligence knew or could have known that the defendant, Phillips & Jacobs, acting through its employees, made libelous statements about him to the FBI prior to April 17, 1984?" The jury answered this question in the affirmative.

The evidence as to when the FBI terminated its investigation, and the information in the file, and when it became available to the plaintiff were matters for the jury's consideration. Based on the evidence it heard and received, we believe there was sufficient evidence for the conclusion it reached. By Mr. Gallucci's own testimony he acknowledged he had some indication that P&J accused him of industrial espionage in October of 1983. He stated he was questioned in front of four or five men including two attorneys after he presented

an offer letter from Hazeltine, and the accusation was made at that time. This meeting was recorded and he was fired immediately after the conference.

Mr. Gallucci was later contacted by the FBI, and submitted himself for interrogation by that agency. He learned the purpose of the investigation was for industrial espionage. He testified he cooperated with the FBI and answered all questions. After the meeting he was told that he would be contacted later. He testified that Hazeltine, where he had gone to work, after leaving the employ of P&J, was contacted by FBI agents. This upset Mr. Gallucci and caused him to believe his job at Hazeltine was in jeopardy. Mr. Gallucci subsequently wrote to President Reagan on February 26, 1984. In his letter he detailed the experiences he and his family had gone through, the involvement of the FBI, and indicated P&J had, "pull enough to get the FBI involved in an employment matter." He received a reply in May of 1984 advising him the investigation had terminated and prosecution was declined. Mr. Gallucci further testified he realized there was some connection between the FBI investigation of him and P&J.

This was the evidence the jury considered in reaching its determination. "In a jury trial, the proper role of the jury includes resolution of [any and all] issues of fact." *Martin v. Soblotney*, 296 Pa. Super. 145, 159, 442 A.2d 700, 707 (1982), *reversed in part*, 502 Pa. 418, 466 A.2d 1022 (1983). In the instant case, it was within the province of the jury to determine whether the plaintiff knew or should have known of his injury to determine when he received this knowledge, as well as whether he exercised reasonable diligence in obtaining the necessary information to support his alle-

gations of libel. The plaintiff's letter to the president of United States could reasonably lead one to conclude that he had knowledge of his injury prior to February 26, 1984. Thus, the jury concluded Mr. Gallucci did not have to wait until he received the information from the FBI files before bringing this claim. It is the function of the court to determine all questions of law but it is the jury's duty to judge the credibility of witnesses and to determine the facts. *Williams v. Dulaney,* 331 Pa. Super. 373, 480 A.2d 1080 (1984).

We conclude the jury's determination was reasonable given the evidence as presented. This court is of the opinion that its verdict should not be set aside.

Next, the plaintiffs allege the court committed reversible error in granting the defendant's motion for a nonsuit to the malicious prosecution count. They contend that although the grand jury failed to indict the plaintiff and institute court proceedings, the grand jury investigation was sufficient to sustain an action for malicious prosecution and it was a sufficient basis for the court to deny the defendant's motion.

The issue before the trial court is whether Mr. Gallucci established sufficient evidence, testimonial and/or demonstrative, in order to prove that the defendant is liable to him for malicious prosecution. This court believes that he has fallen short of meeting his burden of proof.

For purposes of this post-verdict motion, the facts presented will be reviewed most favorable to the plaintiff, the party who opposed the motion for compulsory nonsuit. *McNally v. Liebowitz,* 498 Pa. 163, 445 A.2d 716 (1982).

A court may grant a compulsory nonsuit only if, "the jury, viewing all the evidence and all reasonable

inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established." *Mazza v. Mattiace,* 284 Pa. Super. 273, 277, 425 A.2d 809, 811-812 (1981).

A compulsory nonsuit may not be granted if the defendant has put on evidence. *Brock v. Owens,* 367 Pa. Super. 324, 532 A.2d 1168 (1987). A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence. *Storm v. Golden,* 371 Pa. Super. 368, 538 A.2d 61 (1988). Thus, to avoid a compulsory nonsuit, Gallucci was required to establish the essential elements of his claim. The primary concern presented is whether the wrongful initiation of a meritless suit has occurred. *Triester v. 191 Tenants Assn.,* 272 Pa. Super. 271, 415 A.2d 698 (1979). It must be shown that the party has instituted the "suit with a malicious motive and without probable cause." *Id.* In other words, the reasonable grounds of suspicion that will justify an action for malicious prosecution must not be based upon an inadequate and unreasonable investigation of circumstances concerning the alleged criminal conduct. *Wainauskis v. Howard Johnson Co.* 339 Pa. Super. 266, 488 A.2d 1117 (1985); *Hugee v. Pennsylvania Railroad Co.* 376 Pa. 286, 101 A.2d 740 (1954). And, provable cause has been defined by the courts of Pennsylvania as a "reasonable ground of suspicious supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Wainauskis, supra* at 277, 488 A.2d at 1123.

It is well settled law in this Commonwealth that the issue of probable cause is not dependent upon a finding of guilt or innocence of the accused, but instead it is determined upon the honest and reasonable belief

of the prosecuting party. *Byers v. Ward,* 368 Pa. 416, 84 A.2d 307 (1951). And, where there is no conflict in the testimony as to the circumstances setting forth the allegations of the suit, the court has no need for a jury finding. *Byers, supra.*

The plaintiffs contend that the issuance of the subpoena for Hazeltine's records constituted the initiation of criminal proceedings. We disagree and conclude there were no criminal proceedings instituted in this case. An investigation was undertaken. A subpoena was issued for certain records pursuant to that investigation. We do not believe the issuance of a subpoena for documents is sufficient to meet the test in Pennsylvania for malicious prosecution.

The elements of malicious prosecution are defined by the Restatement (Second) Torts §653 as follows:

"A private person who initiates criminal proceedings against another who is not guilty of the offense charged is liable to him for the harm done thereby if the proceedings ... were initiated ... without probable cause,... and primarily because of a purpose other than that of bringing an offender to justice, and ... have terminated in favor of the accused." *Psinakis v. Psinakis,* 221 F.2d 418 (1955); *Shelton v. Evans,* 292 Pa. Super. 228, 437 A.2d 18 (1981).

An essential element of a claim for malicious prosecution is that the tortfeasor initiate or procure "the institution of criminal proceedings." Restatement (Second) of Torts, §653, Comment (c), §654 of the Restatement defines "the institution of criminal proceedings" as follows:

"(1) The term 'criminal proceedings' includes any proceeding in which a government seeks to prosecute the person for an offense and to impose upon him a penalty of a criminal character.

"(2) Criminal proceedings are instituted when:

"(a) Process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or

"(b) Without the issuance of process an indictment is returned or any information filed against him; or

"(c) He is lawfully arrested on a criminal charge."

Comment (a) to §654 states:

"The term criminal proceedings includes any proceeding in which the state or other government seeks to bring an offender to justice by prosecuting him for a common law or statutory offense and imposing upon him a penalty of a criminal character."

Comment (c) to same section reads:

"*Issuance of process*—'Criminal proceedings' are usually instituted by the issuance of some form of process, generally a warrant for arrest, the purpose of which is to bring the accused before a magistrate in order for him to determine whether the accused shall be bound over for further action by a grand jury for trial by a court. The magistrate may, however, have a summary jurisdiction so that he may at the hearing dispose of the case by finding the accused either innocent or guilty. In either case, the issuance of the process constitutes the institution of the criminal proceedings. Not infrequently, however, an indictment is found by a grand jury or an information filed by a prosecuting officer without previous issuance of a warrant or other process. In these cases the return of the indictment or the filing of the information marks the institution of the proceedings. In all of these cases official action has been

taken that constitutes a formal charge of criminal misconduct against the person accused."

The evidence presented by the plaintiffs falls far short of establishing the necessary elements to establish the tort of malicious prosecution. No formal criminal proceedings were ever initiated against Mr. Gallucci. No warrant was ever issued for his arrest. He was never arrested. He was never indicted nor was a criminal information returned against him. No evidence was presented to the grand jury for the express purpose of securing an indictment or information.

The only evidence presented to the grand jury was for the purpose of the investigation. The making of a criminal charge and the investigation of that criminal charge by the authorities does not constitute the initiation of criminal proceedings. A mere investigation by a prosecuting attorney is not enough to support an action for malicious prosecution. *Losi v. Natalicchio,* 112 N.Y.S.2d 706 (N.Y. Sup. Ct. 1952). This is largely due in part to the fact that a review by a prosecuting attorney of a private criminal complaint is purely an administrative function. If the prosecuting attorney never institutes criminal proceedings via an indictment, warrant, information or arrest, then a plaintiff cannot establish a malicious prosecution case. *Pultz v. Whitehead,* 49 D.&C.3d 444 (1988). If there were no criminal proceedings, as is the case here, then no action for malicious prosecution can be maintained.

The granting of a motion for a nonsuit is proper if it is clear that a cause of action has not been established or in other words, the plaintiff has failed to establish a right to relief. *Storm v. Golden, supra.* It is well settled in Pennsylvania that a compulsory nonsuit may be entered only where facts lead unerringly to a conclusion of the absence of liability. *Griffin v. Tedesco,*

355 Pa. Super. 475, 513 A.2d 1020 (1986). If there is failure of proof as to any necessary element to make out the plaintiff's claim for malicious prosecution, the case should not be submitted to the jury. *Magnussen v. Shortt,* 200 Pa. 257, 49 A. 783 (1901).

The facts presented in this case substantiate the conclusion that the plaintiffs failed to meet their burden. The grand jury subpoena was merely an investigative tool which permitted the FBI to gather information to determine the necessity for further inquiry in this matter. The issuance of the subpoena in no way instituted criminal proceedings against Mr. Gallucci, and does not qualify as formal prosecutorial action designed to obtain a criminal conviction.

To further support their claim, the plaintiffs contend that with respect to an action for malicious prosecution, an allegedly groundless subpoena for employment records should be treated in the same manner as the improper issuance of a search warrant issued without a sufficient showing of probable cause. We disagree with the plaintiffs' argument, and believe it is misplaced. First, the U.S. Supreme Court has clearly defined the constitutional provisions governing the necessity of a search warrant. The court has stated:

"Because a search warrant 'provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer' engaged in the often competitive enterprise of ferreting out crime, we have expressed a strong preference for warrants and declared that 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fail.'" *United States v. Leon,* 468 U.S. 897, 82 L.Ed.2d 677, 104 S.Ct. 3405 (1984) quoting *United States v. Ventresca,* 380 U.S. 102, 106, 13 L.Ed.2d

684, 687, 85 S.Ct. 741, 744 (1965); also see *Aguilar v. Texas*, 378 U.S. at 111, 12 L.Ed.2d 723, 726, 84 S.Ct. 1509, 1512 (1964).

Within this framework, the U.S. Supreme Court has discussed at length other related issues involving the constitutional guarantees of the Fourth Amendment as well as issues examining the magistrate's determination as to whether sufficient probable cause exists. On the state level, the courts of this Commonwealth have set forth extensive efforts to carry out the constitutional guarantees of the Fourth Amendment. Specifically, the laws of Pennsylvania have defined probable cause which is needed to secure a valid search warrant as facts or circumstances, within the knowledge of the arresting officer at the time of arrest, which are sufficient to warrant a reasonable person to believe that the suspect has committed a crime. *Commonwealth v. Wilson*, 245 Pa. Super. 415, 369 A.2d 471 (1976), quoting *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973).

With this in mind, it is quite clear that the courts are willing to go to great lengths to critically re-examine and to safeguard the constitutional guarantees of the Fourth Amendment protections against unreasonable searches and seizure. Neither the courts of the Commonwealth nor the U.S. Constitution provides for similar safeguards in the issuance of subpoenas.

Plaintiffs' counsel cites two cases from other jurisdiction and one Commonwealth case to support his contention that subpoenas should be viewed in the same or similar manner as search warrants issued without an adequate showing of probable cause. These can be distinguished from the case at bar and does not give support to the Galluccis.

For example, in the case of *Olson v. Haggerty*, 69 Wash. 48, 124 P. 145 (1912), the plaintiff alleged the

filing of the criminal complaint which resulted in the issuance of a search warrant for stolen goods was done so with malicious intent. The court held there that:

"Where a party files a complaint, upon which he causes the arrest of another for an alleged crime, it is no defense to an action for malicious prosecution that the complaint was technically defective. So long as it was treated by the justice and officers as sufficient and the defendant in fact was arrested thereon, the party filing it is estopped from questioning its sufficiency. While the case cited and the case quoted arose upon unlawful arrest, it is obvious that the same rule should apply in case of illegal search." In the case of *Hardin v. Hight,* 106 Ark. 190, 153 S.W. 99 (1913), counsel for plaintiffs makes reference to the following quote to support his argument.

The court held there that:

"A search warrant is one of the agencies provided by law for the detection and punishment of crime and the recovery of property stolen. Our Constitution guarantees the right to the people of the state to be secure in their persons, houses, papers and effects against unreasonable search and 'no warrant shall issue, except upon probable cause, supported by oath or affirmation.' etc. Article 2, §15. In other jurisdictions, it has been held that procuring, the issuance of a search warrant against a person maliciously and without probable cause will support an action for damages for malicious prosecution, even though the warrant does not direct the arrest of the person."

In addition, counsel cites the case of *Geske v. Balut,* 83 D.&C. 361 (1952), where an arrest warrant was issued and the charges later dropped prior to any service of the warrant. The court held the mere issuance of

an unserved warrant was sufficient to sustain an action for malicious prosecution.

The cases cited by the plaintiffs offered in support of their position equating the issuance of a subpoena with search warrants and arrest warrants are misguided. The issuance of a search warrant without probable cause, that leads to an invasion of one's expectation of privacy infringes on the basic fabric of the principles upon which this country was founded. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, is a constitutional guaranty. Based on this we cannot take issue with the holdings in *Olson, supra* or *Hardin, supra.* But they are not applicable to the facts in the present case.

Nor is the holding in *Geske, supra,* pertinent to these proceedings. There the defendant appeared before a judicial officer, swore to a complaint and caused an arrest warrant to be issued for the plaintiff. Pursuant to the Restatement this *would* constitute a criminal prosecution. As the testimony disclosed in this case, no arrest warrant was issued for Mr. Gallucci. Ergo, *Geske* is of no help to the plaintiff's cause.

The records subpoena directed to Mr. Gallucci's employer is clearly less intrusive than a search warrant that infringes on one's expectation of privacy, and the issuance of an arrest warrant that can take away a person's liberty. Because a subpoena is not regarded by the courts with the same constitutional safeguards as search warrants, we hold that the grand jury subpoena issued for the plaintiff's employment records was not a sufficient legal basis to sustain an action for malicious prosecution.

This court, therefore, concludes it properly submitted the question of the statute of limitations to the jury. We further conclude there was sufficient evidence for

the finding it made on that issue. We further conclude that the plaintiffs failed to establish the necessary elements to make out a claim for malicious prosecution, and the entry of a compulsory nonsuit on this count was proper, and there is no basis to take it off.

Based on the foregoing, the plaintiffs' post-trial motions were not granted and their request for a new trial was denied.