63    46
35 SC 234

## Paull *versus* Halferty.

1. Where one knowing more than others of the occult qualities or internal values of land, and knowing or believing the condition to be one thing, he represents the facts differently to the prejudice of the owner, he is liable in damages.

2. Where one is prevented from selling, &c., land or other property by the impertinent interference of another, he may maintain an action for the inconvenience suffered.

3. H., being in negotiation with M. for the sale of land containing ore, P., knowing the land, falsely represented to M. that the ore would suddenly run out; in consequence M. refused to purchase. *Held*, that P. was liable to H. in damages.

4. If there had been a contract for the purchase of the land by M., and he had refused to comply on account of the misrepresentations, the remedy of H. would have been on the contract.

October 29th 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Westmoreland county :* No. 178, to October and November Term 1869.

This was an action on the case, commenced September 8th 1866, by Edward L. Halferty against George T. Paull. The plaintiff declared that he was seised in fee of a tract of land having in it valuable deposits of iron ore; that he was negotiating for the sale of the tract with one John Y. McLaughlin, and that McLaughlin " concluded to purchase for $6000 ;" that the defend-

[Paull *v.* Halferty.]

ant having been informed of the negotiation, and " contriving, and falsely and maliciously intending to injure the plaintiff, and to cause and induce the said John Y. McLaughlin to believe that there was but little iron-ore in said tract of land, and thereby to hinder and prevent the plaintiff from selling his estate and interest in said tract of land to the said John Y. McLaughlin, or any other person, and to cause the plaintiff to lose and be deprived of divers great gains, which he might and otherwise would have reaped and derived from the said sale, and to cause the same to be sold for a much less price than the said sum of $6000, or than the same otherwise would have realized and produced, and to vex, harass and oppress the plaintiff;" informed McLaughlin by a letter (set out at large in the declaration), that he had been informed by a practical iron master that the ore would run out suddenly; that " the ore was nearly played out," &c.   By means whereof " McLaughlin, who was about to become the purchaser of the said tract of land, and the iron-ore therein, and who might and otherwise would have purchased the same, was induced to believe that the deposit of iron-ore in said tract of land was nearly exhausted, &c.; and that by means of the said several grievances McLaughlin was deterred and prevented from becoming the purchaser of the said estate and interest of the said plaintiff in said tract of land; and McLaughlin wholly declined to purchase the same, &c.; and thereby the plaintiff was hindered and prevented from selling and disposing of said tract of land to McLaughlin, and hath thereby been deprived of all the advantages and emoluments which he might and otherwise would have derived from the sale thereof to McLaughlin; hath been also otherwise greatly injured and damnified," &c.

On the trial, before Buffington, P. J., March 31st 1869, the plaintiff proved his title, and then gave evidence by McLaughlin, who resided in Pittsburg, that before his negotiation with plaintiff for the purchase of the land the defendant told him that the orebanks were very valuable, &c.; that afterwards the plaintiff offered the land to witness for $6000, and witness told the plaintiff he would take it.   After the witness had gone home he received the following letter from the defendant:—

" As we parted the other day, you said something of buying the tract of land containing the ore-mine.   Now, in order that you may be fully posted before purchasing a ' pig in a poke,' I will give you Col. Mathiot's opinion of that iron-ore deposit. Col. Mathiot, a shrewd, practical man, well known in Pittsburg, who managed this furnace for thirty years, considered it an isolated ' pocket' or ' nest,' as miners call them, that would run out suddenly, and this he gave for as one reason for always using it, in connection with other ore (to save it); but at the same time they found that the furnace worked better on mixed ore.

[Paull *v.* Halferty.]

"And when, some five years ago, I inquired of him, how he come to let that tract be sold for taxes? he replied that he had got all the timber off it, and thought the ore was nearly played out, and, although I thought he was mistaken, he said he was sustained by Arthur Harrison, a miner, who had worked in it. I have not mentioned this before to any one." The witness testified that the letter prevented him from buying.

There was other evidence of the defendant's previous statements to McLaughlin that the ore-banks were valuable, &c. There was also evidence as to the value of the land, the quality of the ore, the probabilities of its being exhausted, &c.

The defendant gave evidence tending to show that the land was of little value, and also that his letter had been written for the purpose of giving McLaughlin "friendly advice."

The defendant submitted these points, viz. :—

"2. Land is not the subject of defamation, as offices, trades, professions and titles are, because the land itself is a standing refutation of any false statements in regard to it, so that it cannot be injured by them.

"3. If the plaintiff in this case sustained any injury from the loss of his bargain, his remedy is against J. Y. McLaughlin for non-performance of his contract to purchase the land for the price agreed upon."

The court answered the first point in the negative and the third as follows :—

"Although plaintiff might have a cause of action against McLaughlin, it would, it does not follow that he could not also support an action against Paull. It is not a case of election or choice of remedies, but being of a separate character both might be sustained. We therefore answer this in the negative."

The court also reserved the point whether it was "the right of the plaintiff to recover under all the facts."

The jury found for the plaintiff $997.50, and the court entered judgment on the verdict.

The defendant took a writ of error, and assigned for error; entering judgment on the verdict on the reserved point and the answers to his points.

*E. Cowan* (with whom were *J. A. Hunter* and *H. D. Foster*), for plaintiff in error.—There is no precedent of an action for such cause, which is evidence that it cannot be maintained: Good *v.* Mylin, 8 Barr 56. There was no evidence that the defendant's letter was false. If the letter was false, and there was a contract with McLaughlin, he could not have depended upon it; the plaintiff had his remedy against McLaughlin on the contract; if there was no contract, plaintiff lost nothing. The damages would be measured by the consideration: McNair *v.* Compton, 11 Casey 23.

[Paull v. Halferty.]

*H. P. Laird* (with whom was *Marchand*), for defendant in error.—Wherever there is a right, there is a remedy by action: 1 Chitty's Pl. 96. Where one is prevented from disposing of his land by the impertinent interference of another, he may maintain an action: 1 Starkie on Slander 191; Smead *v.* Badley, Cro. Jac. 397; Pennyman *v.* Rabanks, Cro. Eliz. 427; Tasbugh *v.* Day, Cro. Jac. 484; Gerrard *v.* Dickenson, Cro. Eliz. 197; Manning *v.* Avery, Keb. 153; Lowe *v.* Harewood, Sir W. Jones 196; Cane *v.* Goulding, Styles' Rep. 169; Malachy *v.* Soper, 3 Bingham N. C. 371; Pater *v.* Baker, 3 Man., Gr. & S. 831. An action will lie for breach of contract, and also against the slanderer: Moody *v.* Baker, 5 Cowen 351. It was not on the plaintiff to prove that the allegations of the letter were not true: Watson *v.* Reynolds, 1 Moody & Malkin 1; Sutton *v.* Johnstone, 1 T. R. 493; Bendish *v.* Lindsey, 11 Modern 194.

The opinion of the court was delivered, January 3d 1870, by

THOMPSON, C. J.—This was an action in the nature of an action of slander for defamation of title. The *narr.* charges the defendant with falsely and maliciously misrepresenting the quality of a certain tract of land supposed to contain a large body of iron ore of which the plaintiff alleges he was about to make an advantageous sale, but was prevented by the malicious conduct of the defendant.

A point was propounded to the court below by the counsel of the defendant, praying a charge that "land is not the subject of defamation, as offices, trades, professions and titles are, because the land itself is a standing refutation of any false statements in regard to it, so that it cannot be injured by them." This the learned judge refused.

The point concedes that an action will lie for defamation of title. The authorities for that are numerous: Cro. Eliz. 196, 427; Cro. Jac. 484; Kel. 153; Styles' Rep. 169; 54 Eng. C. L. 830; to which many others might be added.

It might be true that land cannot be so misrepresented as to be the subject of damages where the reference is to its patent qualities. I fancy that a statement, however malicious, that land is without timber, when notoriously well timbered, could never be the subject of damages. But very different would be the case of those occult qualities or internal values which science and experience may be able to detect. As they never, or very rarely, can be certainly ascertained, and to some extent must rest upon opinion, it seems to me that the case is different. One may know more in regard to the value than others, and if, knowing or believing the condition to be one thing, and representing the facts in a different light and prejudicial to the owner, he does him an injury, he ought to pay the damages his misrepresentation produces, or is the direct cause of.

13 P. F. SMITH—4

[Paull *v.* Halferty.]

The representation in this case was, that an experienced iron manufacturer was of opinion that the iron-ore in the land was but a "pocket" or nest, that would suddenly run out, and that he had used ore from the bank with other ores, in order to save it. This was a most successful mode of depreciating the value of the land as mineral land, and if this was false and malicious as well as injurious to the plaintiff, why shall he not be indemnified? The defendant did not pretend to prove that Col. Mathiot ever did say what he imputed to him, or that the fact, independently of him, was true. The witness, the party in treaty for the land, says that in consequence of this communication from the defendant, having confidence in him, he refused to go on with the purchase, and thus the matter ended. As the use of the words in question was not *in se* actionable, the plaintiff proved their falsity, so far as observation, experience, judgment and the declarations of the defendant could go. This made a case for the jury, and it would, we think, have been manifest error in the judge to have affirmed the defendant's point.

It would hardly be denied, I think, if one were falsely and maliciously to represent that a piece of land and residence which a neighbor was about to sell, was very unhealthy, and thus break off an advantageous sale, that this would be actionable, if damage was, shown.

For misrepresenting personal qualities, such as the imputation of the want of chastity, by which an advantageous marriage was lost, an action lies, although the words employed may not in themselves be actionable. Moody *v.* Baker, 5 Cowen 351, is of this sort, and there are many such in the books. For falsely representing a ship as unseaworthy, an action lies: Ingram *v.* Lawson, 9 Car. & P. 326. This, although the seaworthiness of the vessel might be claimed as "a standing refutation" of the slander, being a thing easily ascertained. I regard the text of Starkie on Slander, page 172, ed. of 1869, as quite to the point in a case of this kind. It is there said, "where a party is prevented from selling, exchanging, or making any advantageous disposition of land or other property, in consequence of the impertinent interference of the defendant, he may maintain an action for the inconvenience he has suffered." Burr. R. 2622 is cited for this by the learned author. With all these analogies and principles to sustain the ruling of the learned judge, we think he committed no error in answering the defendant's first point as he did.

In regard to the second assignment of error, which is the answer of the learned judge to the defendant's second point, much need not be said. It seems to us, that if the law, in answer to it, were wrong to any extent, the facts did not raise the question. The defendant's testimony did not refer, at all, to any completed contract of purchase by McLaughlin from the plaintiff, but he claimed

[Paull v. Halferty.]

it to have been shown by the plaintiff. But when we look at that, we discover nothing like a contract with any time for performance, and necessary details on either side, even by parol. The preliminaries to a contract were spoken of, nothing more, and this the defendant seemed to understand, for he interposed his notice not to buy a "pig in a poke" in order to prevent its completion. A contract for the sale of land is not made by a statement of the price asked and an answer "that I will take it," as said in this case. Arrangements are to be made, as to how and when to be paid, when the conveyance, and what kind of conveyance, is to be made, and then the reduction of the contract to writing and signing it, at least, by the party who is to convey. There was neither a parol nor written contract in evidence in this cause; such an one as a court would have allowed to have gone to the jury as a binding contract for the sale of land. I admit that if there had been a binding contract between the plaintiff and McLaughlin, for the land, and then the latter had refused to comply with his contract on account of the defamatory representations received, the authorities show that the plaintiff's remedy would have been on the contract for damages. This is very clearly asserted by Lord Eldon, C. J., in Morris v. Longdale, 2 Bos. & Pul. 283; see also Vicars v. Wilcocks, 8 East 1; and Bailey v. Drew, 5 Barb. 297. But we need not enlarge; if there were error in this answer, it was innoxious, as the proof did not raise the point.

The learned court entered judgment on the verdict, although it had reserved the question, whether under all the facts the plaintiff was entitled to recover. This was certainly insufficient as a point reserved, Clark & Thaw v. Wilder, 1 Casey 314, and the plaintiff in error cannot ask a review here of anything but what he took exceptions to on the trial. We have, however, discussed all the questions in the case.

Judgment affirmed.