415 A.2d 698

Stanton TRIESTER, Leonard J. Mercer, Jr. and Claude L. Benner, Appellants,

v.

191 TENANTS ASSOCIATION, Morris A. Kravitz, Edward Haisfield, Elaine Lieberman, Rita Korn, Meyer Marcus, Harry Penneys, Edward Polisher, David Ginsberg, Samuel L. Lieberman, Sanford M. Rosenbloom, Mr. & Mrs. Joseph Ariano, Mr. & Mrs. David Becker, Julie Becker, Mr. & Mrs. Morris Berger, Mr. & Mrs. Bordman, Herbert Brilliant, Mr. & Mrs. Lou Brooks, Mrs. Leo Chadwin, Mr. & Mrs. Joseph Cohen, Mr. & Mrs. Sam Cravitz, Joyce Creamer, Mr. & Mrs. Daniel Denenberg, Mr. & Mrs. Max Elion, Mr. & Mrs. Stanley Elkman, Mr. & Mrs. Reuben Feinberg, Dr. & Mrs. Harry Fields, Arthur First, Mr. & Mrs. Philip Frank, Mr. & Mrs. Harry Gold, Mr. & Mrs. Jack Golden, Dorothy Rodgers, Mr. & Mrs. Jack Roeberg, Mr. & Mrs. Samuel Rosenblum, Dr. & Mrs. Oscar Ross, Mr. & Mrs. Harry Ruben, Mr. & Mrs. Ralph Schwartz, Rose Selden, Mr. & Mrs. Abe Serot, Morton Sherman, Mr. & Mrs. Louis Slonsky, Mr. & Mrs. Albert Solomon, Mr. & Mrs. Jerry Solomon, Lillian Soll, Lillian Strickler, Philip Goldstein, Mr. Martin Goodman, Mr. & Mrs. Emanuel Grabell, Mr. & Mrs. Larry Gregg, Mr. & Mrs. Gross, Estelle S. Hirshorn, Alan Horowitz, Mr. & Mrs. Arnold Jacobs, Mr. & Mrs. Cyril Karafin, Mr. & Mrs. Maurice Kendall, Mrs. Stanley Kessler, Mrs. Louis Kushner, Mr. & Mrs. Jack Light, Mr. & Mrs. Michael T. Lubin, Mrs. William Leiser, Mr. & Mrs. Abe Mass, Dr. & Mrs. Jerome Miller, Mr. Marcucilli, Mr. Frank Netsky, Mr. & Mrs. John Netsky, Adele Niessen, Mr. & Mrs. Albert Olanoff, Mr. & Mrs. Charles Penneys, Dr. & Mrs. Raymond Pizor, Mr. & Mrs. Victor Potamkin, Mr. & Mrs. Maurice Rifkin, Mr. & Mrs. Aaron Robinson, Mr. & Mrs. Archie Robinson, Mr. & Mrs. Harry Robinson, Helen Sullivan, Jack Sullivan, Mr. William Sullivan, Mr. & Mrs. Charles Sernaker, Mr. & Mrs. Harry Teplick, Beatrice Toub, Helen Weiss, Mr. & Mrs. Ralph Whitaker, Edgar Woolmington, Mr. & Mrs. Simon Ysem, Trustees Ad Litem and Individually, Joseph W. Pelino, Esquire, David E. Wasserstrom, Esquire, Morris Chucas, Esquire, Tom P. Monteverde, Esquire; Wasserstrom, Chucas & Monteverde, a partnership.

Superior Court of Pennsylvania.

Argued March 22, 1979.

Filed Nov. 16, 1979.

274

Lenard L. Wolffe, Philadelphia, for appellants.

Charles Craven, G. Wayne Renneisen, Joseph R. Thompson, Philadelphia, Desmond J. McTighe, Norristown, Harry Rutenberg, Philadelphia, William H. Kinkead, III, and with him William H. Bradbury, III, Norristown, Donald J. Matthews, Jr., Deborah R. Willig, Philadelphia, and Arthur R. Tilson, Ambler, for appellees.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

The instant appeal is from an order of the trial court granting appellees' preliminary objection in the nature of a demurrer to appellants' action for disparagement of title, malicious use of civil process, and abuse of process. For the reasons stated herein, we affirm.

In May of 1973, appellants purchased a ten story apartment building known as 191 Presidential Boulevard, located in Lower Merion Township, Montgomery County. On July 30, 1973, they filed a Declaration and Code of Regulations[1] with the Recorder of Deeds in Montgomery County estab-

---

1. *See* the Unit Property Act, Act of July 3, 1963, P.L. 196, art. I., §§ 101 *et seq.*, 68 P.S. §§ 700.101 *et seq.*

lishing 191 Presidential Boulevard as a condominium. In August of 1973 appellee, 191 Tenants Association, was formed by the tenants of 191 Presidential Boulevard to oppose the planned conversion from apartments to condominiums. In furtherance of its opposition, the tenants association, through its legal advisors, commenced an equity action on January 15, 1974, requesting, *inter alia*, that appellants be enjoined from converting the apartments into condominiums and from increasing the rent of any tenant whose lease may expire in the interim.[2] On March 28, 1974, judgment on the pleadings was entered on behalf of appellants and the case dismissed.[3] *See 191 Tenants Association v. Triester*, 98 Mont.Co.L.R. 206 (1974). That decision was

**2.** The basis for appellees' equity suit was their assertion that in seeking to convert the apartments into condominiums, appellants had violated the following statutory provisions:

(a) The Unit Property Act, note 1 *supra*, by failing to provide the tenants with a "selling document" detailing certain information regarding the planned conversion to condominiums;

(b) The Securities Act of 1933, 15 U.S.C. §§ 77a–77bbbb (1970) and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78gg (1970) by failing to record the proposed conversion plan with the Securities and Exchange Commission;

(c) Ordinance No. 1703 of Lower Merion Township which regulated the development of condominiums.

Appellees also alleged that appellants had made false and fraudulent statements regarding the planned conversion to condominiums.

**3.** In granting judgment on the pleadings, the trial court resolved the charges raised in appellees' complaint as follows:

(a) the Unit Property Act did not require appellants to supply the tenants with a "selling document";

(b) The Securities and Exchange Commission had promulgated guidelines on January 4, 1973, in which it ruled that condominiums of the type involved in the instant proceeding were not "securities" requiring registration with that agency; and

(c) the Lower Merion Township ordinance regulating condominium developments was not applicable to appellants' planned conversion because it was not effective until November 4, 1973, and appellants had filed their plan on July 30, 1973. In fact, the ordinance was not even proposed for adoption until August 23, 1973, approximately three weeks subsequent to appellants' recording of the plan.

Finally, the court ruled that even if appellants had made false statements regarding the planned conversion, fraud had not been established since appellees had not detrimentally relied upon the representations and none of the tenants had accepted the offer to purchase their apartment as a condominium.

affirmed per curiam by the Supreme Court of Pennsylvania on October 3, 1975. *191 Tenants Association v. Triester*, 463 Pa. 143, 344 A.2d 466 (1975).

On April 18, 1977, appellants filed suit against the tenants association, its members, and its legal advisors seeking damages allegedly sustained as a result of the prior equity action. Appellants alleged that prior to the initiation of the equity action, appellees threatened to slander appellants' title to the premises and threatened to engage in meritless litigation to delay the conversion to condominiums. The complaint further alleges that appellees subsequently instituted a meritless suit, and that as a result the title to the planned condominiums was rendered unmarketable and uninsurable, thus preventing appellants from soliciting prospective condominium purchasers. Finally, the complaint alleges that because of the delay caused by the meritless suit and appellee-tenants' refusal to pay rent increases, appellants encountered a cash flow problem such that they were unable to pay the mortgage, taxes and other charges associated with the operation of the building. All of this was done maliciously with the result that appellants were forced to default on the mortgage and their ownership interest in the building was divested causing a loss of $15,000,000.

Preliminary objections in the nature of a demurrer were filed on behalf of all appellees. After argument before an en banc court, the objections were sustained and appellants' complaint dismissed in an order dated July 3, 1978. It is from that order that appellants appeal, alleging that their complaint sufficiently stated causes of action for disparagement of title, abuse of process, and malicious use of process.

It is axiomatic that a party presenting a preliminary objection in the nature of a demurrer admits, for purposes of the motion, all material and relevant facts that are pleaded and every reasonable inference that may be deducible therefrom. *See, e. g., Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976); *Philadelphia v. Penn Plastering Corp.*, 434 Pa. 122, 253 A.2d 247 (1969). The same standard is applied on appeal from a trial court's order sustaining a demurrer. *See, e. g.,*

*Consumers Education and Protective Ass'n v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977); *National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 381 A.2d 963 (1977).

Appellants' first theory of recovery was on a claim for disparagement of title arising from the prior equity suit wherein appellees alleged sixty-seven defects in the structure at 191 Presidential Boulevard. Appellants claim that these allegations disparaged, slandered and clouded their title to the property.

Disparagement of title, variously labeled slander of title, defamation of title, or in other contexts, slander of goods, trade libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property. *See Young v. Geiske*, 209 Pa. 515, 58 A. 887 (1904); *Paull v. Halferty*, 63 Pa. 46, 3 Am.Rep. 518 (1870). Without resolving whether appellees' complaint in the prior suit was sufficient to sustain such an action, the trial court ruled that as a matter of law, appellees were entitled to an absolute defense since the statements were made during the course of litigation.

> Under the Restatement (Second) of Torts § 587 (1977) "[a] party to a private litigation or a private prosecutor or defendant in a criminal prosecution is *absolutely privileged* to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." [Emphasis added].

This defense has been recognized in this Commonwealth for ordinary actions of defamation. *See, e. g., Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 275 A.2d 53 (1971); *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 235 A.2d 576 (1967), *cert. denied sub nom. Scarselletti v. Aetna Casualty & Surety Co.*, 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968); *Barto v. Felix*, 250 Pa.Super. 262, 378 A.2d 927 (1977). While recognizing the judicial defense, appellants

assert that the defense is inapplicable in the instant proceeding for several reasons.

First, they claim that an action for disparagement of title is different from an action for pure defamation and that the defense is inapplicable in the former proceeding. The action of defamation is designed to protect the reputation of the plaintiff while disparagement of title is intended to protect the owner's saleable interest in the property. *See Note, Disparagement of Property: A Right of Action*, 65 Dick.Law Rev. 145 (1961); *cf. Paull v. Halferty, supra; Hygienic Fleeced Underwear Co. v. Way*, 35 Pa.Super. 229 (1908). The Restatement (Second) of Torts § 635 (1977) provides that the privileges available in defense of an action in pure defamation are also available in an action for disparagement of title. Although our research has failed to uncover any cases in this Commonwealth in which the judicial privilege was asserted in a disparagement of title case, we can perceive of no reason why the defense should not be available in both actions. Appellants' attempted distinction based upon the interest to be protected is without merit.

Second, appellants claim that even if the privilege does exist in a disparagement of title action, it is unavailable when the disparaging statements are made with a malicious motive. In effect, appellants would have this court convert the judicial privilege from one that is absolute to one that is qualified. *See Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971) (qualified privilege vitiated when defendant acts with malice in publishing defamatory statement). This is contrary to the clear and express language of the Restatement (Second) of Torts. Moreover, although this claim has not been addressed in the context of a disparagement of title action, it has been rejected in this Commonwealth in cases of pure defamation, and the only restriction is that the statements be relevant to the judicial proceedings. *See Greenberg v. Aetna Ins. Co., supra.*

Finally, appellants claim that the judicial privilege is not applicable to the entirety of their complaint because

they alleged that appellees made disparaging remarks in a context other than that necessary to the judicial proceedings. Reviewing the record, we are unable to agree with appellants' assessment.

Paragraph 113 of appellants' complaint states that appellees "announced their intention to slander the appellants' title" and threatened to engage in frivolous litigation. This is followed by an assertion that appellees instituted suit wherein they alleged deficiencies in appellants' title and defects in the building. The latter assertion falls within the judicial privilege exception of § 587, and the former is not an assertion of disparagement of title, but is merely a claim that appellees threatened to engage in such disparagement. Therefore, we cannot agree with appellants that their complaint alleged disparagement in a context other than that covered by the judicial privilege.

Appellants' second cause of action was for malicious use of civil process and for abuse of process. Although often confused in the pleading and proof in this Commonwealth, the actions are separate and distinct. An abuse of process arises when a party employs legal process for some unlawful purpose, not the purpose for which it was intended. The classic example is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon. The gist of the action is the proper issuance of the original process, but an abuse of that process after it has been issued such that there is a perversion of the process. *See, e. g., Baird v. Aluminum Seal Co.,* 250 F.2d 595 (3d Cir. 1958); *Morphy v. Shipley,* 351 Pa. 425, 41 A.2d 671 (1945); *Casa Di Sardi, Inc. v. Alpha Motors, Inc.,* 227 Pa.Super. 415, 323 A.2d 288 (1974). The action of malicious use of process, on the other hand, is concerned with the wrongful initiation of a meritless suit. It occurs when a party institutes suit with a malicious motive and without probable cause. *See, e. g., Baird v. Aluminum Seal Co., supra; Dumont Television & Radio Corp. v. Franklin Electric Co.,* 397 Pa. 274, 154 A.2d 585 (1959).

■ In the instant case, appellants allege that appellees' prior equity suit was instituted without probable cause and was motivated by a desire to delay appellants' planned conversion to condominiums. Although pleaded as a joint action for abuse of process and malicious use of process such a claim, if proven, may only establish a cause of action for malicious use of civil process. *Cf. Dumont Television & Radio Corp. v. Franklin Electric Co., supra* (dicta) (malicious use of process if defendant filed involuntary bankruptcy petition against bankrupt third party to prevent plaintiff from collecting on recently acquired judgment when defendant was not even a creditor of the third party).

Because the action was for malicious use of process, the trial court sustained the demurrer on the basis that appellants had failed to allege a seizure of their person or property. Such a requirement was established in *Kramer v. Stock,* 10 Watts 115 (1840), and has remained an essential element of the action in this Commonwealth. *See, e. g., DeLeo v. Munley,* 261 Pa.Super. 90, 395 A.2d 957 (1978); *Garcia v. Wall & Ochs, Inc.,* 256 Pa.Super. 74, 389 A.2d 607 (1978). The rationales advanced for this requirement have been numerous. In *Garcia v. Wall & Ochs, Inc., supra,* this court stated that the rule was necessary to prevent parties to civil actions from being inhibited in presenting their claims. In *Mayer v. Walter,* 64 Pa. 283 (1870), it was noted that a plaintiff who brings a frivolous suit is sufficiently punished by being forced to pay the costs of the suit. *But see* Note, *Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis,* 88 Yale L.J. 1218, 1227 (1979). Finally, in *Muldoon v. Rickey,* 103 Pa. 110, 113 (1883), the supreme court, in discussing the burden of defending a frivolous suit, observed that

"[a]ll are troublesome, expensive and often ruinous, and if for such damage the action of the case could be maintained, there would be no end of litigation, for the conclusion of one suit would be but the beginning of another. It has, therefore, been wisely determined that for the prosecution of a civil suit, however unfounded, where there has

been no interference with either the person or property of the defendant, no action will lie."

*See also Norcross v. Otis Bros. & Co.*, 152 Pa. 481, 25 A. 575 (1893); *Eberly v. Rupp*, 90 Pa. 259 (1879).

Instantly, the trial court ruled as a matter of law that appellants' claims of deprivation and loss were insufficient to satisfy the seizure of property requirement in an action for malicious use of process. We agree and affirm.

In determining what is a sufficient seizure for purposes of an action for malicious use of process, it is necessary to distinguish between those losses that result from a direct seizure arising from the suit, and those that are mere indirect or incidental losses that may be associated with any legal proceeding. Thus, in *Muldoon v. Rickey, supra,* the defendant brought an ejectment action against the plaintiff that resulted in a cloud being placed on the title to the plaintiff's property, caused his credit to suffer, and prevented him from utilizing the property as collateral to secure a loan. In denying recovery in plaintiff's subsequent suit, the court reasoned as follows:

> "[T]here was no interference with either the person or property of the defendant, [sic, plaintiff?] it does not appear that he suffered damage of any kind except as may be regarded as necessarily incident to all actions of this character. The action of ejectment temporarily clouds the title to the property in controversy, and so may for the time prevent a sale of or mortgage upon it. But a damage of this kind is not more direct than that resulting from the expense, loss of time, and often loss of credit, arising from the ordinary forms of legal controversy." *Id.* at 112–13.

In *Norcross v. Otis Bros. & Co., supra,* the seizure requirement was not fulfilled by defendant's instructions to a third party not to pay a sum of money to plaintiff because the sum of money was the subject of a dispute between the plaintiff and defendant, and in *Eberly v. Rupp, supra,* the requirement was not satisfied by defendant's institution of an earlier unfounded action to restrain plaintiff from com-

mitting waste. Finally, the alleged loss of goodwill of a business, or damage to one's reputation, or the loss of consortium, have been held not to establish a seizure of the person or property for an action of malicious use of civil process to lie. *See Garcia v. Wall & Ochs, Inc., supra; Roberts v. Gibson,* 214 Pa.Super. 220, 251 A.2d 799 (1969).

Instantly, appellants claim that their complaint alleges a satisfaction of the seizure requirement in various forms: (1) their loss of ownership interest in 191 Presidential Boulevard; (2) their inability to attract condominium purchasers as a result of the cloud on their title; and (3) the loss of rental income as a consequence of the "rent strike" by appellee-tenants.

Applying the proper tests, we find the alleged "seizures" to be insufficient to state a proper cause of action. First appellants' loss of their ownership interest in 191 Presidential Boulevard was, they admit, an ancillary loss occasioned by appellees' equity suit and was not the direct result of any proceeding in that action. Therefore, it was the type of loss that may be associated with any legal proceeding. Likewise, the cloud on appellants' title and the subsequent inability to attract condominium purchasers is the type of indirect loss found insufficient in *Muldoon v. Rickey, supra.* Finally, the loss of rental income resulting from appellee-tenants' refusal to pay rent increases did not arise from any action in the equity suit. Appellees' complaint in the equity suit requested an injunction to restrain appellants from imposing any rent increases and from evicting any tenants who refused to abide by any such increases. An examination of the blue books in the appeal of the equity cases discloses that the injunction request was apparently withdrawn.[4] Moreover,

4. We note that subsequent to oral argument appellees' attorney sent correspondence providing certain information regarding the prior equity proceeding directly to the members of this court. This communication prompted the attorneys for appellants to send direct correspondence expressing their concern regarding the actions of appellee attorneys. We direct the attention of both parties to Pa.R. A.P. 2501(a) which forbids such direct correspondence unless authorized.

during the pendency of the case, appellants allegedly commenced ejectment actions against those tenants whose leases had expired. Finally, an examination of the blue books again reveals that both the trial court and the supreme court denied appellees' supersedeas requests to enjoin the ejectment actions pending the completion of the appeal process. Thus, any deprivation from the inability to collect increased rent assessments was not a "seizure" arising from the equity suit, but was instead the result of independent action by the tenants, and was apparently only of a temporary nature. Therefore, the losses alleged in appellants' complaint were insufficient to satisfy the seizure of property requirement necessary to support an action for malicious use of process, and the court of common pleas did not err in sustaining appellees' demurrers.

The order of the trial court is affirmed.

SPAETH, J., files a concurring statement.

SPAETH, Judge, concurring:

I agree that the order of the lower court should be affirmed, but only because this court is bound by the Supreme Court's adoption of, and adherence to, the English rule; were the question open for this court's examination, I might be persuaded that this rule should be abandoned in favor of the rule stated in the Restatement (Second) of Torts § 674 (1977). *See Garcia v. Wall & Ochs, Inc.*, 256 Pa.Super. 74, 79, 389 A.2d 607, 610 (1978) (SPAETH, J., concurring).