**Patricia A. KEDRA**

v.

**NAZARETH HOSPITAL.**

**Civ. A. No. 93–6125.**

United States District Court,
E.D. Pennsylvania.

Nov. 4, 1994.

---

734

Alan B. Epstein, Jablon, Epstein and Wolf, Paul J. Drucker, Paul J. Drucker, P.C., Philadelphia, PA, for plaintiff Patricia A. Kedra.

Michael F. Kraemer, Laura W. Brewer, White & Williams, Philadelphia, PA, for defendant Nazareth Hosp.

### *MEMORANDUM*

DALZELL, District Judge.

I. *Introduction*

Plaintiff Patricia Kedra suffers from learning disabilities and a speech impediment. In 1974, defendant Nazareth Hospital hired her to work in its laundry department (Complaint ¶ 12). She worked in that department for twelve years, after which she was discharged, allegedly without warning (Complaint ¶ 14).

Kedra filed a charge of discrimination against the Hospital, which a March, 1986, settlement agreement resolved. Under this agreement, the Hospital rehired Kedra as a part-time dietary aide (Complaint ¶¶ 15–16).

Kedra interpreted—and still interprets—this agreement as the Hospital's promise to promote her to a full-time job in the dietary department (Complaint ¶ 19).

Her complaint in this action alleges she began to claim her right to a full-time position in 1989, after having been passed over for promotion to a full-time position (Complaint ¶ 18).[1] Kedra also asserts that Hospital employees and supervisors demeaned, mocked, and harassed her because of her disabilities (Complaint ¶ 20).

In January of 1992, Nazareth placed Kedra on three months' "probation", allegedly for poor job performance (Complaint ¶ 21). On April 15, 1992, the Hospital discharged her, claiming "wilful misconduct" (Complaint ¶ 22). Kedra alleges that the Hospital continued to harass her even after it discharged her, by opposing and appealing her claim for unemployment compensation benefits (Complaint ¶ 23–25). Despite the Hospital's opposition and appeals, the Pennsylvania Office of Employment Security ultimately did award Kedra unemployment benefits. Kedra asserts that Nazareth's actions—placing her on probation, charging her with wilful misconduct, discharging her, and opposing her claim for unemployment compensation benefits—were done to intimidate and harass her, and to retaliate against her for having filed her earlier claim of discrimination.

Kedra filed her Complaint in this Court on November 18, 1993. She asserted seven counts against the defendants. Counts I and III charged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12213. By Order dated February 28, 1994, we dismissed these two claims, holding that the operative facts in Kedra's complaint occurred before the ADA took effect. Counts II and IV alleged violations of the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. § 955(a) (1991 & Supp.1994); our Order of July 7, 1994 denied the Hospital's motion for partial summary judgment on these claims, and we filed a nine-page Memorandum on that day explaining our reasoning, 857 F.Supp. 430. Counts V, VI, and VII allege state law claims of wrongful discharge,

breach of contract, and abuse of process; the parties' prior motion practice did not bring these claims before us for review.

By Order dated April 14, 1994, we granted Kedra's unopposed motion to assert an eighth count against the Hospital. Count VIII alleges a violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

Nazareth has moved this Court for summary judgment as to all counts in Kedra's complaint. The Hospital has also filed a motion to strike Kedra's Rehabilitation Act claim to the extent that she seeks compensatory damages, punitive damages, and a jury trial for its alleged violation. We will grant the Hospital's summary judgment motion as to Count V only, and we will deny the Hospital's motion to strike.

## II. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, *id.* at 248, 106 S.Ct. at 2510, and all inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying for the Court those portions of the record that it believes demonstrate the absence of dispute as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

---

1. We note, though, that Kedra has given a much earlier date in response to an interrogatory. *See*

Exhibit C to *Defendant's Motion for Summary Judgment.*

If the moving party meets its initial burden, the non-moving party then must satisfy Rule 56(e), and "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## III. *Legal Analysis*

### A. *Counts I–IV*

The parties have invited us to revisit our prior rulings in this case. Specifically, Kedra asks us to vacate our earlier Order dismissing Counts I and III. In turn, the Hospital asks us to grant summary judgment as to Counts II and IV, which we declined to do in July.

We have reviewed our prior rulings on these four counts, and see no reason to disturb them. We thus decline to rule again on Counts I through IV.

### B. *Count V: Wrongful Discharge with Specific Intent to Harm*

■ Count V alleges that Nazareth terminated Kedra's employment with the specific intent to harm her (Complaint ¶¶ 40–42). The dispute between the parties over this issue is purely legal. Nazareth interprets Pennsylvania law to reject the claim of wrongful discharge with specific intent to harm. Kedra argues the contrary.

We have addressed this issue before. In *Melendez v. Horizon Cellular Tel. Co.,* 841 F.Supp. 687, 692–94 (E.D.Pa.1994), we examined the existing authority and concluded that the Pennsylvania Supreme Court would not recognize a wrongful discharge claim if

presented with the question today. We noted that panels of the Pennsylvania Superior Court have granted recovery on the claim. *Id.* at 693. We also recorded our amiable disagreement with our colleague, Judge Joyner, who has allowed plaintiffs to proceed on the claim. *Id.* at 694 n. 11.[2]

We based our conclusion in *Melendez* on two relatively recent cases, *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989), and *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990). *Melendez,* 841 F.Supp. at 693. Both cases emphasized the continuing validity of the general rule restated in *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 176 (1974), that "absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." In *Paul,* for example, the court explicitly directed litigants to Justice Nix's concurring statement in *Clay,* in which he wrote:

[T]his Court did not announce a cause of action for wrongful discharge in *Geary.* [ ... ] Indeed the language in *Geary* clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist.

*Paul,* 569 A.2d at 348 (quoting *Clay,* 559 A.2d at 923) (Nix, J., concurring) (alteration added). In *Clay,* the court emphasized that it had recognized "[e]xceptions" to the rule of at-will employment "in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Clay,* 559 A.2d at 918.

We continue to predict that the Pennsylvania Supreme Court would not recognize a claim like that of Count V, and we will therefore grant summary judgment as to that claim.

**2.** Indeed, our disagreement with Judge Joyner's opinion in *Altopiedi v. Memorex Telex Corp.,* 834 F.Supp. 800 (E.D.Pa.1993), reveals less about this particular legal issue than about the difficulties in trying to fulfill the mind-reading duties imposed upon us by *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Klaxon v. Stentor Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477

(1941). Chief Judge Sloviter has detailed the perils of forecasting the decisions of a state's highest court. *See* Delores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction through the Lens of Federalism,* 78 Va.L.Rev. 1671, 1675–81 (1992) ("[T]he state courts have found fault with a not insignificant number of past 'Erie guesses' made by the Third Circuit and our district courts.").

## C. Count VI: Breach of Contract

Count VI alleges a state law breach of contract claim. Kedra alleges that Nazareth breached the settlement agreement that the parties had entered to resolve Kedra's first charge of discrimination. The operative language of the agreement reads:

> In exchange for the promises of the Complainant, the Respondent shall: Offer the Complainant a part-time position as a Dietary Aide in the Dietary Department, 20 hours weekly.... Based on a good performance the Complainant will be given every consideration for any full time opening in the Dietary Department.

*See* Exhibit G to *Defendant's Motion for Summary Judgment.* Kedra reads this language as a promise to promote her as long as she showed "good performance" (Complaint ¶ 45). Nazareth argues that the plain language of the agreement did not obligate it to promote her, and that it maintained absolute discretion to determine whether Kedra's performance warranted full-time work. Each party believes its position so obvious as to eliminate the need for citation of authority.

■ Pennsylvania law appears to take a middle ground between the two arguments that the parties present to us. We must interpret the terms of a written contract literally, according to its plain terms. *Krizovensky v. Krizovensky,* 425 Pa.Super. 204, 624 A.2d 638, 643 *allocatur denied,* 536 Pa. 626, 637 A.2d 287 (1993); *Warren v. Greenfield,* 407 Pa.Super. 600, 595 A.2d 1308, 1312 (1991) ("When the words of a contract are unequivocal, they speak for themselves"). Here, contrary to Kedra's assertions, the plain terms of the contract do *not* obligate Nazareth to give Kedra a full-time job. It only obligates the Hospital to give her "every consideration" for a full-time job, provided that Kedra exhibited "good performance". Thus, we cannot conclude that the Hospital's failure to promote Kedra to full time is a *prima facie* breach of the settlement agreement.

3. Nazareth also asserts that Pennsylvania's four-year statute of limitations for contract claims, 42 Pa.Cons.Stat.Ann. § 5525 (1981 & Supp.1994), bars Kedra's claim. The Hospital focuses on the

■ We decline, however, to accept the Hospital's assertions that the agreement left it with total discretion to promote Kedra or not. Rather, the plain language of the contract obliged the Hospital to give her "every consideration" for full-time work. Pennsylvania law imposes a duty of good faith and fair dealing in the performance of every contract. *Liazis v. Kosta, Inc.,* 421 Pa.Super. 502, 618 A.2d 450, 454 (1992) ("Fundamentally, every contract imposes upon the parties a duty of good faith and fair dealing in the performance and enforcement of the contract.") (citing *Germantown Mfg. Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985)), *allocatur denied sub nom. Tantaros v. Liazis,* 536 Pa. 630, 637 A.2d 290 (1993).

■ *Rawlinson,* though a confusing case, is helpful to our analysis. In *Rawlinson,* the defendant signed a note in which she promised to pay " 'any and all amounts in excess of One hundred and sixty thousand dollars ($160,000) *which are determined by Affidavit of the President of Germantown Manufacturing Company....*' " *Rawlinson,* 491 A.2d at 140 (emphasis added). The Superior Court interpreted the contract to require the president of the company to exercise good faith in determining this amount:

> Though it did not say so expressly, the second note did not authorize the President to arbitrarily designate any amount he desired on a whim.... "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." ... We therefore imply the promise on the part of Germantown to act in good faith in determining and setting the amount owed.

*Id.* at 148 (citing *Restatement (Second) of Contracts* § 205 (1981)). We imply a similar duty here. The Hospital's duty of good faith and fair dealing on this term surely required it in fact to give Kedra such consideration. At trial, Kedra may present evidence to show that the Hospital failed to act in good faith in the performance of the duty imposed by the settlement agreement.[3]

time during which Kedra allegedly asserted her right to full-time work; it alleges that Kedra only sought full-time work through the first months of

### D. *Count VII: Abuse of Process*

■ We interpret Count VII to allege the common law intentional tort of abuse of process.[4] In Pennsylvania, the tort of abuse of process requires three elements: (1) an "abuse" or "perversion" of process already initiated (2) with some unlawful or ulterior purpose, and (3) harm to the plaintiff as a result. *Shaffer v. Stewart*, 326 Pa.Super. 135, 473 A.2d 1017, 1019 (1984); *Triester v. 191 Tenants Ass'n*, 272 Pa.Super. 271, 415 A.2d 698, 702–03 (1979).

■ Count VII satisfies all three of these elements. It alleges that Kedra initiated a claim for unemployment compensation, which the Hospital opposed for an "improper, unlawful, [and] harassing" purpose (Complaint ¶ 48). As a result of these actions, Kedra alleges that she suffered economic, mental, and emotional damages (Complaint ¶¶ 27–29).

The Hospital has denied these allegations; it has not, however, come forward with specific evidence by which we could resolve the claim. For example, it has not filed affidavits by Hospital administrators negating an unlawful or ulterior purpose. Thus, we must conclude that a genuine issue of fact still exists over Count VII.

### E. *Count VIII: Rehabilitation Act of 1973*

As noted above, Kedra filed an amended complaint on April 20, 1994, in which she added Count VIII. Count VIII alleges that Nazareth violated section 504 of the Rehabilitation Act of 1973. Nazareth has filed two motions in response to the added Count. First, it has moved for summary judgment to the extent that Kedra seeks to base her claim on conduct that occurred outside the relevant limitations period. Second, it has filed a motion to strike Count VIII to the extent that it seeks compensatory and punitive damages and a jury trial.

#### a. *Summary Judgment Issues*

Section 504 of the Rehabilitation Act of 1973 states, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in § 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). In Pennsylvania, the Rehabilitation Act has a two-year statute of limitations, *see, e.g., Holland v. Allied Servs. for the Handicapped*, Civ. No. 92–0814, 1993 WL 668670, at *2 (M.D.Pa. May 21, 1993), *aff'd without op.*, 17 F.3d 1429 (3d Cir.1994), and plaintiff has recognized that conduct oc-

---

1987 and thus that her four-year limitations period expired in 1991.

We reject Nazareth's timeliness argument for two reasons. First, the record reveals that Kedra asserted her right to a promotion on a monthly basis beginning in August, 1986. *See* Exhibit F to *Defendant's Motion for Summary Judgment*. Because we are not allowed to make credibility determinations at this stage, we will assume that Kedra continued to seek full-time work until Nazareth fired her in April, 1992. Second, and more importantly, we do not believe that Kedra's conduct alone is the proper focus for determining the date of the breach.

At trial, Kedra will bear the burden of showing that the Hospital breached the agreement within the limitations period. She may do this at a minimum by showing that (1) she applied and was qualified for full-time positions that came open in the Dietary Department within the limitations period; (2) her performance at the time of application was "good"; and (3) the Hospital failed to consider her for these position in good faith.

**4.** Confusion arises only because plaintiff has styled Count VII as a "Malicious Abuse of Process" claim. This term is an amalgam of two distinct causes of action, namely, malicious *use* of process and abuse of process. Pennsylvania recognizes both types of actions. *See, e.g., Shaffer*, 473 A.2d at 1019. We interpret Kedra to allege a claim of abuse of process, for two reasons. First, Pennsylvania has codified the action of malicious use of civil process, *see* 42 Pa.Cons. Stat. § 8351 (1982), and plaintiff's complaint does not refer to the relevant statute. More importantly, however, malicious use of civil process requires as an element the wrongful *initiation* of legal proceedings, *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 32 A.2d 413, 415 (1943), and Kedra alleges that *she* initiated her claim for unemployment benefits, against which Nazareth mounted an "improper, unlawful, harassing *defense*" (Complaint ¶ 48) (emphasis added).

curring outside of that period cannot form part of her claim in Count VIII, *see Plaintiff's Response to Defendant's Motion for Summary Judgment,* at 18.

The parties appear to agree that conduct occurring more than two years before April 7, 1994[5] falls outside of the relevant limitations period. Based on Federal Rule of Civil Procedure 15, however, we have concluded that the date before which evidence must be excluded is November 18, 1991. Although Kedra's counsel dated her amended complaint on April 7, 1994 and filed it on April 20, 1994, the operation of Rule 15(c)(2) relates the date of filing of the amended complaint back to the date of filing of the original complaint.[6]

Here, Kedra filed her original complaint on November 18, 1993, and we deem the amended complaint to have been filed on that date. Thus, the date of her discharge, April 15, 1992 (Complaint ¶ 22), falls within the limitations period, as would all of the Hospital's post-discharge conduct and at least some of its pre-discharge conduct as alleged in the Complaint.

We therefore must deny summary judgment as to Count VIII. At trial, Kedra may advance her Rehabilitation Act claim by presenting evidence within the relevant limitations period.

b. *The Motion to Strike*

■ Neither party disputes that Kedra may maintain a private right of action under § 504. After *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 630 n. 7, 104 S.Ct.

1248, 1252 n. 7, 79 L.Ed.2d 568 (1984), *superseded by statute on other grounds by* Civil Rights Restoration Act of 1987, Pub.L. No. 100–259, § 4, 1988 U.S.S.C.A.N. (102 Stat.) 28, 29–30 (1988), it is well-established that § 504 creates an implied private right of action. Instead, Kedra and the Hospital clash over the remedies available for a violation of § 504. The Hospital argues that Kedra may only receive equitable relief (*e.g.,* injunctions, declaratory relief, reinstatement, and back pay). Kedra argues that compensatory and punitive damages are available to her as well.[7]

We believe that Kedra has the better of the argument on this issue. In *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, ——, 112 S.Ct. 1028, 1033, 117 L.Ed.2d 208 (1992), the Supreme Court addressed the issue of the remedies available for violations of implied private rights of action. *Id.,* 112 S.Ct. at 1032. The plaintiff there sought compensatory damages for the defendant's violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. The Court "presume[d] the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Franklin,* 112 S.Ct. at 1032. The Court traced precedent consistent with its presumption from 1702 to the present day, *id.,* 112 S.Ct. at 1032–35, in formulating the following "general rule":

> The general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cogniza-

---

5. Kedra's counsel signed her amended complaint on this date.

6. Rule 15(c)(2) tells us, in relevant part:

   **(c) Relation Back of Amendments.** An Amendment of a pleading relates back to the date of the original pleading when

   . . . .

   (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

   Fed.R.Civ.P. 15(c)(2). There is no question that Kedra's Rehabilitation Act claim arises out of the Hospital's conduct as alleged in her original Complaint. *See* 6A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Pro-*

*cedure* § 1496 (2d ed.1990). The authors of the treatise counsel:

> Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

*Id.* (footnote omitted).

7. The relevant statutory language instructs us only that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available" in § 504 actions. 29 U.S.C. § 794a(a)(2).

ble cause of action brought pursuant to a federal statute.

*Id.,* 112 S.Ct. at 1035. The applicability of this general rule does not depend on the source of the implied right of action. The Court instructed that the source of the implied right and the remedies available for its violation are "analytically distinct" issues. *Id.,* 112 S.Ct. at 1032 (quoting *Davis v. Passman,* 442 U.S. 228, 239, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1970)). If the Court has created an implied right of action, as it has with § 504, then *Franklin* makes all appropriate remedies available for the violation of that right.

Although our Court of Appeals has not yet decided the issue, we conclude that Kedra may receive compensatory damages if she proves her § 504 violation. We find persuasive the analysis of *Franklin* in *Pandazides v. Virginia Board of Education,* 13 F.3d 823, 830 (4th Cir.1994). In *Pandazides,* the Fourth Circuit applied *Franklin* to a § 504 action in which a plaintiff sought compensatory damages. In reaching its conclusion that *Franklin* permitted compensatory damages for § 504 claims, the Fourth Circuit focused on the broad language in *Franklin* and the similarity between § 504 and Title IX. *Id.* at 830–32. The Eighth Circuit has also held money damages available for § 504 violations, for the same reasons. *Rodgers v. Magnet Cove Public Schools,* 34 F.3d 642, 643–44 (8th Cir.1994) (Arnold, C.J.).

We also conclude that punitive damages are appropriate for § 504 violations, for four reasons. First, the Rehabilitation Act of 1973 is a remedial statute designed to protect plaintiffs' civil rights, and the Supreme Court has charged us to interpret such statutes broadly to give effect to the purpose behind their enactment. *Cf. Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980) (interpreting 42 U.S.C. § 1983 "generously to further its primary purpose"). Second, § 504 claims have been compared to tort claims, in which punitive damages are traditionally available. *See Pandazides, supra,* 13 F.3d at 829. Third, the countervailing forces that have led other courts to conclude that punitive damages are inappropriate are absent in § 504 actions.

*See CSX Transp. Inc. v. Marquar,* 980 F.2d 359, 382 (6th Cir.1992) (holding punitive damages inappropriate in actions under the Railway Labor Act, because, "[i]n the volatile atmosphere of labor-management relations, the threat of a damages action could upset the balance intended by the RLA"). Finally, we note that Congress has amended Title VII to allow recovery of punitive damages, albeit only for intentional discrimination, 42 U.S.C. § 1981a(a)(1), and with a monetary cap, *id.* § 1981a(b)(3). This amendment reveals to us that Congress has decided, at least in the context of Title VII, that punitive damages are an appropriate remedy for violations of a plaintiff's civil rights.

Because we have concluded that the jury may award Kedra compensatory and punitive damages if she proves that Nazareth has violated § 504, we must deny the Hospital's motion to strike Kedra's jury demand as to this claim. Indeed, the premise of the Hospital's motion to strike Kedra's jury demand lies in its argument that Kedra may only seek equitable relief for § 504 violations. Because we have rejected this argument and have held that Kedra may seek legal relief, we conclude that Kedra is entitled to present her § 504 claim to a jury. *See Pandazides, supra,* 13 F.3d at 832.

IV. *Conclusion*

On a motion for summary judgment, the movant has the burden to come forward with evidence that shows that no genuine issue of material fact exists. Although the Supreme Court has described this burden in the negative, *i.e.,* as "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case", *Celotex, supra,* 477 U.S. at 325, 106 S.Ct. at 2554, the movant's burden is nevertheless an affirmative one: the movant must show the record to the district court and explain how the record is devoid of genuine issues of material fact. Only then does the burden shift to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case". *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992). We cannot grant summary judgment on the bald assertions in Nazareth's briefs to this Court,

for such statements would not be admissible at trial. Fed.R.Civ.P. 56(e). Thus, based on the materials before us, we must conclude that genuine issues of material fact remain with respect to Counts VI, VII, and VIII.

An appropriate Order follows.

### ORDER

AND NOW, this 4th day of November, 1994, upon consideration of defendant's Motion for Summary Judgment and defendant's Motion to Strike Plaintiff's Rehabilitation Act of 1973 Claims for Compensatory and Punitive Damages and Jury Trial Demand, and the responses of plaintiff thereto, and in accordance with the Memorandum Opinion filed this day, it is hereby ORDERED that:

1. Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, to the extent of ¶ 2-3 below;

2. JUDGMENT IS ENTERED in favor of defendant Nazareth Hospital and against plaintiff Patricia Kedra as to Count V;

3. In all other respects, defendant's Motion for Summary Judgment is DENIED; and

4. Defendant's Motion to Strike Plaintiff's Rehabilitation Act of 1973 Claims for Compensatory and Punitive Damages and Jury Trial Demand is DENIED.